1|5 21

Tameka Renee Crosland
4238 3rd Ave
Los Angeles, California 90008
Tel: 213 660-5993

In Pro Per



FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

JAN 26 2024

CENTRAL DISTRICT OF CALIFORNIA
BY            DEPUTY

PAID

**United States District Court**

**Central District of California**

| | |
|---|---|
| Tameka Renee Crosland, Successor Trustee | Case No: 8:24-cv-00186-FWS-(DFMx) |
| Plaintiff, | **COMPLAINT**<br>**FOR WRONGFUL FORECLOSURE** |
| V. | 1. EMBEZZLEMENT OF REAL PROPERTY (In Irrevocable Trust) Cal. Pen. Code Sec 504 |
| Baron Silverstein, individually, CEO of Caliber Home Loans, Inc; Caliber Home Loans, Inc, individually; Jeffrey Stenman, individually, CEO of Quality Loan Service Corporation; Quality Loan Service Corporation, individually; Shellpoint Mortgage Servicing LLC, individually; Tao Hong, individually; Jingkang Hong, individually; Golden Combo Holding and Management, LLC, individually; and Does 1- 30 inclusive. | 2. FRAUD (Lack of notice of the sale to the debtor) Cal. Com. Code Sec 9-504(3)<br><br>3. STATUTES OF FRAUD (Uniform Commercial Code Sec 2-201)<br><br>4. GRAND THEFT Cal. Pen. Code Sec 487<br><br>5. ACTIONABLE FRAUD |
| Defendants. | **TRIAL BY JURY DEMANDED** |

Plaintiff Tameka Renee Crosland sues Defendants Baron Silverstein, Caliber Home Loans, Inc, Jeffrey Stenman, Quality Loan Service Corporation, Shellpoint Mortgage Servicing, LLC, Tao Hong, Jingkang Hong, and Golden Combo Holding Management, LLC, for money damages and states:

**JURISDICTIONAL ALLEGATIONS**

1. This is an action for money damages in excess of $713,167.00.

1

2. At all times material to this lawsuit, Plaintiff Tameka Renee Crosland is a resident of Los Angeles County, California.

3. At all times material to this lawsuit, Defendant Baron Silverstein, CEO of Caliber Home Loans, Inc has a principal address located in Coppell Texas, and conducts business in this state.

4. At all times material to this lawsuit, Defendant Caliber Home Loans, Inc is a Delaware Corporation, and conducts business in this state.

5. At all times material to this lawsuit, Defendant Jeffrey Stenman, CEO of Quality Loan Service Corporation has principal address located in Seattle Washington, and conducts business in this state.

6. At all times material to this lawsuit, Defendant Quality Loan Service Corporation is a California Corporation, with its address located in San Diego California.

7. At all times material to this lawsuit, Defendant Shellpoint Mortgage Servicing, LLC is dissolved California Corporation located in Los Angeles, California conducting business in this state.

8. At all times material to this lawsuit Tao Hong is a resident of Irvine, California.

9. At all times material to this lawsuit Jingkang Hong is a resident of Irvine, California.

10. At all times material to this lawsuit Golden Combo Holding and Management LLC is California Corporation with it address located in Irvine, California.

11. Plaintiff does not know the true names, capacities, or basis for liability of Defendants sued herein as Does 1 through 30, inclusive, as each fictitiously named Defendant is in some manner liable to Plaintiff, or claimed some right, title, or interest in the property contained in an "irrevocable trust". Plaintiff will amend this complaint to allege their true names and capacities when ascertained through discovery. Plaintiff is informed and believes, and thereon alleges that all relevant times mentioned in this complaint, each of the fictitiously named defendants are responsible in some manner for the injuries and damages to Plaintiff so alleged and that such injuries and damages were proximately caused by such defendants, and each of them.

12. Plaintiff is informed and believes that at all times herein mentioned, each of the defendants were the officers, agents, employees, servants and/or the joint-ventures of the remaining

2

defendants, and each of them in doing the things alleged herein below, were acting within the course and scope of such agency, corporation, employment and/or joint venture.

13. All acts necessary or precedent to the bringing of this lawsuit occurred or accrued in Los Angeles County, California.

14. This Court has jurisdiction.

**GENERAL FACTUAL ALLEGATIONS**

15. On April 6, 2011, James Crosland, Borrower irrevocably grants and convey to Trustee, (*Adelita A. Shubert*) in trust, with power of sale, the following described property located located in Los Angeles County and particularly described as 4238 3rd Ave Los Angeles California 90008. Attached and incorporated herein by reference Exhibit ("1"). As a direct result Plaintiff lost her real property in an irrevocable trust.

FIRST CAUSE OF ACTION
(Embezzlement Cal. Pen. Code. 504)

16. Plaintiff realleges and restates the foregoing jurisdictional allegations and general factual allegations.

17. On or about January 10, 2023 defendants Jeffery Stenman, Quality Loan Service Corporation, Baron Silverstein, Caliber Home Loans did commit a felony namely: EMBEZZLEMENT, a violation of Section 504 of the Penal Code of the State of California, County of Los Angeles, in that said defendant did unlawfully as an officer, director, trustee, clerk, servant, or agent of any association, society, or corporation (public or private), who fraudulently appropriates to any use or purpose not in the due and lawful execution of that person's trust, any property in his or her possession or under his or her control by virtue of that trust, or secretes it with a fraudulent intent to appropriate it to that use or purpose, is guilty of

3

embezzlement. Attached and incorporated herein by reference Exhibit ("2").

**WHEREFORE** Tameka Renee Crosland demands judgment for money damages against Defendants, together with such other and further relief as the Court may deem reasonable and just under the circumstances.

SECOND CAUSE OF ACTION
(Embezzlement Cal. Pen. Code. 504)

18. Plaintiff realleges and restates the foregoing jurisdictional allegations and general factual allegations.

19. On or about April 20, 2023 defendants Jeffery Stenman, Quality Loan Service Corporation, did commit a felony namely: EMBEZZLEMENT, a violation of Section 504 of the Penal Code of the State of California, County of Los Angeles, in that said defendant did unlawfully as an officer, director, trustee, clerk, servant, or agent of any association, society, or corporation (public or private), who fraudulently appropriates to any use or purpose not in the due and lawful execution of that person's trust, any property in his or her possession or under his or her control by virtue of that trust, or secretes it with a fraudulent intent to appropriate it to that use or purpose, is guilty of embezzlement. Attached and incorporated herein by reference Exhibit ("3").

**WHEREFORE** Tameka Renee Crosland demands judgment for money damages against Defendants, together with such other and further relief as the Court may deem reasonable and just under the circumstances.

THIRD CAUSE OF ACTION
FRAUD
(Cal. Comm. Code Sec 9-504(3)

20. Plaintiff realleges and restates the foregoing jurisdictional allegations and general factual allegations.

4

21.   On or about April 20, 2023 defendant defendants Jeffery Stenman, Quality Loan Service Corporation, did commit fraud namely: LACK OF NOTICE OF SALE, a violation of Section 9504(3) of the Commercial Code of the State of California, County of Los Angeles, in that said defendants failed to post the notice of public sale in a newspaper publication at least five (days) before the sale. The *California Supreme Court* has ruled that the requirements of giving notice of sale to the debtor is separate and distinct from the requirement that the sale be conducted in a commercially reasonable manner. Both notice and commercial reasonableness was not satisfied by defendants to obtain a deficiency against the debtor. Attached and incorporated herein by reference Exhibit ("4").

**WHEREFORE** Tameka Renee Crosland demands judgment for money damages against Defendants, together with such other and further relief as the Court may deem reasonable and just under the circumstances.

FOURTH CAUSE OF ACTION
STATUTES OF FRAUD
(Uniform Commercial Code Sec 2-201)

22. Plaintiff realleges and restates the foregoing jurisdictional allegations and general factual allegations.

23.   On or about January 1, 2024 defendants Tao Hong, Jingkang Hong and Golden Combo Holding and Management, LLC did commit taking of property namely: NO SIGNED AGREEMENT, a violation of Section 2-201 of the Uniform Commercial, in that said defendants did commit the taking of Plaintiff's property involving $500 or more in value without a "signed agreement of contract to sell", which constitute fraud perpetrated on the Plaintiff. Attached and incorporated herein by reference Exhibit ("5").

**WHEREFORE** Tameka Renee Crosland demands judgment for money damages against

5

Defendants, together with such other and further relief as the Court may deem reasonable and just under the circumstances.

### FIFTH CAUSE OF ACTION
(Grand Theft Cal. Pen. Code 487)

24. Plaintiff realleges and restates the foregoing jurisdictional allegations and general factual allegations.

25. On or about January 1, 2024 defendants Tao Hong, Jingkang Hong and Golden Combo Holding and Management, LLC did commit a felony namely: GRAND THEFT, a violation of Section 487 of the Penal Code of the State of California, County of Los Angeles, in that said defendants did unlawfully commit theft of personal property exceeding nine hundred fifty dollars, (1) Real Property. Attached and incorporated herein by reference Exhibit ("6").

**WHEREFORE** Tameka Renee Crosland demands judgment for money damages against Defendants, together with such other and further relief as the Court may deem reasonable and just under the circumstances.

### SIXTH CAUSE OF ACTION
(Embezzlement Cal. Pen. Code. 504)

26. Plaintiff realleges and restates the foregoing jurisdictional allegations and general factual allegations.

27. On or about January 1, 2024 defendants Tao Hong, Jingkang Hong and Golden Combo Holding and Management, LLC, did commit a felony namely: EMBEZZLEMENT, a violation of Section 504 of the Penal Code of the State of California, County of Los Angeles, in that said defendants did unlawfully as an officer, director, trustee, clerk, servant, or agent of any association, society, or corporation (public or private), who fraudulently appropriates to any use or purpose not in the due and lawful execution of that person's trust, any property in his or her

6

possession or under his or her control by virtue of that trust, or secretes it with a fraudulent intent to appropriate it to that use or purpose, is guilty of embezzlement. Attached and incorporated herein by reference (Exhibit "7").

**WHEREFORE** Tameka Renee Crosland demands judgment for money damages against Defendants, together with such other and further relief as the Court may deem reasonable and just under the circumstances.

SEVENTH CAUSE OF ACTION
(Actionable Fraud)

28. Plaintiff realleges and restates the foregoing jurisdictional allegations and general factual allegations.

29. On or about October 6, 2023 defendant Shellpoint Mortgage Servicing, LLC did commit namely: ACTIONABLE FRAUD, to induce another to part with property or surrender some legal right, deceive in that said defendant knowingly and willfully made demands for payment after its corporate status was dissolved and cancelled on April 28, 2023. Attached and incorporated herein by reference (Exhibit "8").

**WHEREFORE** Tameka Renee Crosland demands judgment for money damages against Defendants, together with such other and further relief as the Court may deem reasonable and just under the circumstances.

30. As a direct and proximate result, real property in irrevocable trust in excess of $713,167.00. was fraudulently taken by Defendants and Plaintiff, has suffered money damages.

It is further alleged that the co-conspirators, in the fraud Baron Silverstein, Caliber Home Loans, Inc, Jeffery Stenman, Quality Loan Service Corporation, Shellpoint Mortgage Servicing, LLC, Tao Hong, Jingkang Hong and Golden Combo Holding and Management, LLC did commits acts which perpetrated such fraud and aggravated the above crime(s) without limitation.

**WHEREFORE** Tameka Renee Cros, Plaintiff demands judgment for money damages against

Defendants as follows:

1. as compensatory damages, the sum of $713,167.00;

2. as punitive damages the sum of $2,139,501.00;

3. the right to amend this complaint as warranted by further evidence and fact finding;

4. and other such relief as to the Court seems proper.

I declare under penalty of perjury that the foregoing is true and correct and that complaint consist

of seven (7) causes of action.

Executed at Los Angeles, California on January 24, 2024

Tameka Renee Crosland, Plaintiff
Successor Trustee
In Pro Per

8

EXHIBIT 1



This page is part of your document - DO NOT DISCARD

**20110567995**





Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**04/20/11 AT 08:00AM**

Pages:
0028

| FEES: | 100.00 |
|---|---|
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 100.00 |



**L E A D S H E E T**



201104200130001

00004049513

003270102

SEQ:
24

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

T79

04/20/2011

*20110567995*

After Recording Return To:
FLAGSTAR BANK
5151 CORPORATE DRIVE
TROY, MI 48098
FINAL DOCUMENTS, MAIL STOP W-531-1

RECORDER'S MEMO
LEGIBLE COPY ATTACHED HERETO

V7 WBCD LOAN # 503167339

[Space Above This Line For Recording Data]

## DEED OF TRUST   55655240

| MIN 100052550316733947 |

DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.
(A) "Security Instrument" means this document, which is dated **APRIL 6, 2011,**                together with all Riders to this document.
(B) "Borrower" is **JAMES CROSLAND, A SINGLE MAN.**

Borrower is the trustor under this Security Instrument.
(C) "Lender" is **FLAGSTAR BANK, FSB.**

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3005 1/01                Initials:
© 1999-2009 Online Documents, Inc.                **Page   1   of   12**                **CAEDEED**
CAEDEDL  0908
04-06-2011 8:44

V7, WBCD LOAN # 503167339
Lender is a **FEDERALLY CHARTERED SAVINGS BANK**                                      organized and existing under the laws of
**UNITED STATES OF AMERICA.**                                                           Lender's address is **5151 CORPORATE DR,**
**TROY, MI  48098-2639.**

(D) "Trustee" is ADELITA A. SHUBERT.

(E) **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) **"Note"** means the promissory note signed by Borrower and dated **APRIL 6, 2011.**         The Note states that Borrower owes Lender ***********TWO HUNDRED THOUSAND ONE HUNDRED FORTY AND NO/100
****************************************************** Dollars (U.S.   **$200,140.00** )
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **MAY 1, 2041.**

(G) **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

(H) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider          ☐ Condominium Rider                       ☐ Second Home Rider
☐ Balloon Rider                  ☐ Planned Unit Development Rider          ☐ Other(s) [specify]
☐ 1-4 Family Rider               ☐ Biweekly Payment Rider
☐ V.A. Rider

(J) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) **"Escrow Items"** means those items that are described in Section 3.

(N) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

CALIFORNIA--Single Family--**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3005 1/01**
© 1999-2009 Online Documents, Inc.                **Page  2  of  12**                       Initials:
                                                                                            CAEDEDL  0908
                                                                                            04-06-2011 8:44

V7. WBCD LOAN # 503167339

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY                                    [Type of Recording Jurisdiction] of LOS ANGELES

[Name of Recording Jurisdiction]:

LOT 252 OF TRACT NO. 2195, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 22 PAGE(S) 148 OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN #: 5022-027-023

SEE EXHIBIT "A" ATTACHED

which currently has the address of 4238 3RD AVE, LOS ANGELES,

[Street] [City]

California  90008-4010        ("Property Address"):

[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS Borrower and Lender covenant and agree as follows:

1   Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current, Lender

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3005 1/01          Initials: JC

© 1999-2009 Online Documents, Inc.          Page  3  of 12          CAEDEDL  0908

04-06-2011 8:44

V7 WBCD LOAN # 503167339

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to Borrower at the address set forth above.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_(Seal)_

JAMES CROSLAND

State of CALIFORNIA
County of LOS ANGELES

On 4-6-2011 , before me, Gregory C Hughes A Notary Public
(here insert name and title of the officer), personally appeared JAMES CROSLAND, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Gregory Charles Hughes_

(SEAL)

CALIFORNIA--Single Family--**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3005 1/01**
© 1999-2009 Online Documents, Inc.                    **Page 12 of 12**

Initials: _SC_
CAEDEDL 0906
04-06-2011 8:44

# CALIFORNIA ALL-PURPOSE
# CERTIFICATE OF ACKNOWLEDGMENT

State of California

County of  Los Angeles

On  4-6-2011  before me,  Gregory C Hughes A Notary Public
_____
(Here insert name and title of the officer)

personally appeared  James Costand

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Gregory Charles Hughes_
Signature of Notary Public

GREGORY CHARLES HUGHES
Commission # 1786852
Notary Public - California
Los Angeles County
My Comm. Expires Dec 24, 2011

(Notary Seal)

---

## ADDITIONAL OPTIONAL INFORMATION

### DESCRIPTION OF THE ATTACHED DOCUMENT

_____
(Title or description of attached document)

_____
(Title or description of attached document continued)

Number of Pages _____ Document Date_____

_____
(Additional information)

### CAPACITY CLAIMED BY THE SIGNER

☑ Individual (s)
☐ Corporate Officer

_____
(Title)

☐ Partner(s)
☐ Attorney-in-Fact
☐ Trustee(s)
☐ Other

### INSTRUCTIONS FOR COMPLETING THIS FORM

Any acknowledgment completed in California must contain verbiage exactly as appears above in the notary section or a separate acknowledgment form must be properly completed and attached to that document  The only exception is if a document is to be recorded outside of California  In such instances, any alternative acknowledgment verbiage as may be printed on such a document so long as the verbiage does not require the notary to do something that is illegal for a notary in California (i e  certifying the authorized capacity of the signer)  Please check the document carefully for proper notarial wording and attach this form if required

* State and County information must be the State and County where the document signer(s) personally appeared before the notary public for acknowledgment
* Date of notarization must be the date that the signer(s) personally appeared which must also be the same date the acknowledgment is completed
* The notary public must print his or her name as it appears within his or her commission followed by a comma and then your title (notary public)
* Print the name(s) of document signer(s) who personally appear at the time of notarization
* Indicate the correct singular or plural forms by crossing off incorrect forms (i e  he/she/they, is /are ) or circling the correct forms  Failure to correctly indicate this information may lead to rejection of document recording
* The notary seal impression must be clear and photographically reproducible  Impression must not cover text or lines  If seal impression smudges, re-seal if a sufficient area permits, otherwise complete a different acknowledgment form
* Signature of the notary public must match the signature on file with the office of the county clerk
  ❖ Additional information is not required but could help to ensure this acknowledgment is not misused or attached to a different document
  ❖ Indicate title or type of attached document, number of pages and date
  ❖ Indicate the capacity claimed by the signer  If the claimed capacity is a corporate officer, indicate the title (i e  CEO, CFO, Secretary)
* Securely attach this document to the signed document

2008 Version CAPA v12 10 07 800-873-9865  www NotaryClasses com

EXHIBIT A - LEGAL DESCRIPTION

Tax Id Number(s): 5022-027-023

Land Situated  In the County of Los Angeles in the State of CA

LOT 252 OF TRACT NO. 2195. IN THE CITY OF LOS ANGELES. COUNTY OF LOS ANGELES, STATE OF
CALIFORNIA, AS PER MAP RECORDED IN BOOK 22 PAGE(S) 148 OF MAPS. IN THE OFFICE OF THE
COUNTY RECORDER OF SAID COUNTY.

Commonly known as:   4238 3rd Avenue , Los Angeles, CA 90008

EXHIBIT 2

 

**This page is part of your document - DO NOT DISCARD**



## 20230033607



**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**01/17/23 AT 02:52PM**

**Pages:
0005**

| | |
|---|---|
| FEES: | 31.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 106.00 |



**L E A D S H E E T**



202301170240168

00023126885



013873672

**SEQ:
01**

**SECURE - Daily**



**THIS FORM IS NOT TO BE DUPLICATED**



APN No.: 5022-027-023
Recording requested by:
Quality Loan Service Corp

When recorded mail to:
Quality Loan Service Corporation
2763 Camino Del Rio South
San Diego, CA 92108

TS No.: CA-22-943930-AB
Order No.: DEF-489024                              Space above this line for Recorder's use
Property Address: 4238 3RD AVE, LOS ANGELES, CA 90008

## IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL
## UNDER DEED OF TRUST

**NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS
DOCUMENT ATTACHED TO THE COPY PROVIDED TO THE
MORTGAGOR OR TRUSTOR (Pursuant to Cal. Civ. Code § 2923.3)
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE
DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG
ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG
TIN TRONG TÀI LIỆU NÀY**

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE
BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY
COURT ACTION,** and you may have the legal right to bring your account in good
standing by paying all of your past due payments plus permitted costs and expenses within
the time permitted by law for reinstatement of your account, which is normally five
business days prior to the date set for the sale of your property. No sale date may be set
until approximately 90 days from the date this Notice of Default may be recorded (which
date of recordation appears on this notice). This amount is $28,340.35 as of 1/10/2023 and
will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as
insurance and taxes) required by your note and deed of trust or mortgage. If you fail to
make future payments on the loan, pay taxes on the property, provide insurance on the
property, or pay other obligations as required in the note and deed of trust or mortgage,
the beneficiary or mortgagee may insist that you do so in order to reinstate your account in

TS No.: **CA-22-943930-AB**

good standing.  In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay.  You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made.  However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three-months after this Notice of Default is recorded) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**CALIBER HOME LOANS, INC.**
**C/O QUALITY LOAN SERVICE CORPORATION**
**2763 Camino Del Rio S**
**San Diego, CA 92108**
**619-645-7711**

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.  Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN:  That the undersigned is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated 4/6/2011, executed by JAMES CROSLAND, A SINGLE MAN, as Trustor, to secure certain obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS BENEFICIARY, AS NOMINEE FOR FLAGSTAR BANK, FSB, ITS SUCCESSORS AND ASSIGNS, as beneficiary, recorded 4/20/2011, as Instrument No. 20110567995,      of Official Records in the Office of the Recorder of LOS ANGELES County, California describing land therein:  as more fully described in said Deed of Trust.

Said obligations including 1 NOTE(S) FOR THE ORIGINAL sum of $200,140.00, that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the beneficiary; that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

TS No.: CA-22-943930-AB

The installments of principal and interest which became due on 7/1/2021, and all subsequent installments of principal and interest through the date of this Notice, plus amounts that are due for late charges, delinquent property taxes, insurance premiums, advances made on senior liens, taxes and/or insurance, trustee's fees, and any attorney fees and court costs arising from or associated with the beneficiaries efforts to protect and preserve its security, all of which must be paid as a condition of reinstatement, including all sums that shall accrue through reinstatement or pay-off. Nothing in this notice shall be construed as a waiver of any fees owing to the Beneficiary under the Deed of Trust pursuant to the terms of the loan documents.

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

Pursuant to the attached Declaration, the mortgage servicer declares that it has contacted the borrower, tried with due diligence to contact the borrower as required by California Civil Code § 2923.55 or § 2923.5, or is otherwise exempt from the requirements of § 2923.55 and §2923.5.

If you have previously been discharged through bankruptcy, you may have been released of personal liability for this loan in which case this letter is intended to exercise the note holders right's against the real property only.

QUALITY MAY BE CONSIDERED A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

Dated:  JAN 1 0 2023          Quality Loan Service Corp., Trustee

By: Stephanie Echeverria, Assistant Secretary

## CALIFORNIA DECLARATION OF COMPLIANCE
## WITH (CAL. CIV. CODE 2923.55)

Borrower(s):    JAMES CROSLAND
Property:       4238 3RD AVE, LOS ANGELES, CA 90008
Loan No.:
Trustee Sale No:

The undersigned, as an authorized agent or employee of the mortgage servicer named below, declares as follows:

1. ☐ The mortgage servicer has contacted the borrower to assess the borrowers financial situation and explore options for the borrower to avoid foreclosure as required California Civil Code 2923.55.

2. ☑ The mortgage servicer has tried with due diligence to contact the borrower as required by California Civil Code 2923.55 but has not made contact despite such due diligence. The due diligence efforts were satisfied on 08/03/2021.

3. ☐ No contact was required because the individual did not meet the definition of the "borrower" under California Civil Code 2920.5(c).

4. ☐ The requirements of California Civil Code 2923.55 do not apply because the loan is not secured by a first lien mortgage or deed of trust on residential real property that meets the criteria in California Civil Code 2924.15(a)(1) ("owner-occupied") or 29424.15(a)(2) ("occupied by tenant")

I certify that this declaration is accurate, complete, and supported by competent and reliable evidence which the mortgage servicer has reviewed to substantiate the borrower's default and the right to foreclose, including the borrowers loan status and loan information.

Dated:  August 29, 2022

Caliber Home Loans, Inc.

Signature of Agent or Employee

Ms Kendra C. Kendall
Printed name of Agent or Employee

Pre-FC Evaluation Manager
Title of Agent or Employee

EXHIBIT 3




**This page is part of your document - DO NOT DISCARD**





**20230257295**

Pages:
0004

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**04/21/23 AT 09:57AM**

| | | |
|---|---|---|
| FEES: | | 35.00 |
| TAXES: | | 0.00 |
| OTHER: | | 0.00 |
| SB2: | | 75.00 |
| PAID: | | 110.00 |



LEADSHEET



202304210970024

00023375437



014030597

SEQ:
01

SECURE - Daily - Time Sensitive



**THIS FORM IS NOT TO BE DUPLICATED**

E248947

9801590622-600200-3-CROS

Recording requested by:
QUALITY LOAN SERVICE CORPORATION

When recorded mail to:
Quality Loan Service Corporation
2763 Camino Del Rio South
San Diego, CA 92108

---

TS No. **CA-22-943930-AB**

Order No.: **DEF-489024**

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## NOTICE OF TRUSTEE'S SALE

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED TO THE
COPY PROVIDED TO THE MORTGAGOR OR TRUSTOR (Pursuant to Cal. Civ. Code 2923.3)

注：本文件包含一个信息摘要

참고사항: 본 첨부 문서에 정보 요약서가 있습니다

NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO

TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP

LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 4/6/2011.  UNLESS YOU TAKE ACTION
TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE.  IF YOU NEED AN
EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT
A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn
by state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings
association, or savings bank specified in Section 5102 to the Financial Code and authorized to do business in this
state, will be held by duly appointed trustee. The sale will be made, but without covenant or warranty, expressed or
implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by
the Deed of Trust, with interest and late charges thereon, as provided in the note(s), advances, under the terms of the
Deed of Trust, interest thereon, fees, charges and expenses of the Trustee for the total amount (at the time of the
initial publication of the Notice of Sale) reasonably estimated to be set forth below.  The amount may be greater on
the day of sale.

**BENEFICIARY MAY ELECT TO BID LESS THAN THE TOTAL AMOUNT DUE.**

| | |
|---|---|
| Trustor(s): | **JAMES CROSLAND, A SINGLE MAN** |
| Recorded: | **4/20/2011** as Instrument No. **20110567995**  of Official Records in the office of the Recorder of **LOS ANGELES** County, California; |

Date of Sale: **5/18/2023 at 9:00 AM**

Place of Sale: **At the Doubletree Hotel Los Angeles-Norwalk, 13111 Sycamore Drive, Norwalk, CA
90650, in the Vineyard Ballroom**

Amount of unpaid balance and other charges: **$189,528.00**

The purported property address is:  **4238 3RD AVE, LOS ANGELES, CA 90008**

Assessor's Parcel No.: **5022-027-023**

TS No.: **CA-22-943930-AB**

**NOTICE TO POTENTIAL BIDDERS:** If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

**NOTICE TO PROPERTY OWNER:** The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call **800-280-2832** for information regarding the trustee's sale or visit this internet website **http://www.qualityloan.com**, using the file number assigned to this foreclosure by the Trustee: **CA-22-943930-AB**. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the internet website. The best way to verify postponement information is to attend the scheduled sale.

**NOTICE TO TENANT:** You may have a right to purchase this property after the trustee auction pursuant to Section 2924m of the California Civil Code. If you are an "eligible tenant buyer," you can purchase the property if you match the last and highest bid placed at the trustee auction. If you are an "eligible bidder," you may be able to purchase the property if you exceed the last and highest bid placed at the trustee auction. There are three steps to exercising this right of purchase. First, 48 hours after the date of the trustee sale, you can call **800-280-2832**, or visit this internet website **http://www.qualityloan.com**, using the file number assigned to this foreclosure by the Trustee: **CA-22-943930-AB** to find the date on which the trustee's sale was held, the amount of the last and highest bid, and the address of the trustee. Second, you must send a written notice of intent to place a bid so that the trustee receives it no more than 15 days after the trustee's sale. Third, you must submit a bid so that the trustee receives it no more than 45 days after the trustee's sale. If you think you may qualify as an "eligible tenant buyer" or "eligible bidder," you should consider contacting an attorney or appropriate real estate professional immediately for advice regarding this potential right to purchase.

**NOTICE TO PROSPECTIVE OWNER-OCCUPANT:** Any prospective owner-occupant as defined in Section 2924m of the California Civil Code who is the last and highest bidder at the trustee's sale shall provide the required affidavit or declaration of eligibility to the auctioneer at the trustee's sale or shall have it delivered to QUALITY LOAN SERVICE CORPORATION by 5 p.m. on the next business day following the trustee's sale at the address set forth in the below signature block.

The undersigned Trustee disclaims any liability for any incorrectness of the property address or other common designation, if any, shown herein.  If no street address or other common designation is shown, directions to the location of the property may be obtained by sending a written request to the beneficiary within 10 days of the date of first publication of this Notice of Sale.

If the sale is set aside for any reason, including if the Trustee is unable to convey title, the Purchaser at the sale shall be entitled only to a return of the monies paid to the Trustee.  This shall be the Purchaser's sole and exclusive remedy.  The purchaser shall have no further recourse against the Trustor, the Trustee, the Beneficiary, the Beneficiary's Agent, or the Beneficiary's Attorney.

TS No.:  **CA-22-943930-AB**

If you have previously been discharged through bankruptcy, you may have been released of personal liability for this loan in which case this letter is intended to exercise the note holders right's against the real property only.

**QUALITY MAY BE CONSIDERED A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

Date: 4-20-53

**QUALITY LOAN SERVICE CORPORATION**
**2763 Camino Del Rio S**
**San Diego, CA 92108**
**619-645-7711 For NON SALE information only**
Sale Line: 800-280-2832
Or Login to: http://www.qualityloan.com
Reinstatement Line: (866) 645-7711 Ext 5318

Quality Loan Service Corporation by: Yolanda Yancy, Assistant Secretary.

EXHIBIT 4




**This page is part of your document - DO NOT DISCARD**



## 20230257295



**Pages:**
**0004**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**04/21/23 AT 09:57AM**

| | |
|---|---|
| FEES: | 35.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 110.00 |



**L E A D S H E E T**



202304210970024

00023375437



014030597

**SEQ:**
**01**

SECURE - Daily - Time Sensitive



**THIS FORM IS NOT TO BE DUPLICATED**



9801590622-600200-3-CROS

Recording requested by:
QUALITY LOAN SERVICE CORPORATION

When recorded mail to:
Quality Loan Service Corporation
2763 Camino Del Rio South
San Diego, CA 92108

---

TS No.  CA-22-943930-AB

Order No.: DEF-489024

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## NOTICE OF TRUSTEE'S SALE

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED TO THE COPY PROVIDED TO THE MORTGAGOR OR TRUSTOR (Pursuant to Cal. Civ. Code 2923.3)

注：本文件包含一个信息摘要

참고사항: 본 첨부 문서에 정보 요약서가 있습니다

NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 4/6/2011.  UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE.  IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn by state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings association, or savings bank specified in Section 5102 to the Financial Code and authorized to do business in this state, will be held by duly appointed trustee. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, with interest and late charges thereon, as provided in the note(s), advances, under the terms of the Deed of Trust, interest thereon, fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below.  The amount may be greater on the day of sale.

**BENEFICIARY MAY ELECT TO BID LESS THAN THE TOTAL AMOUNT DUE.**

Trustor(s):   **JAMES CROSLAND, A SINGLE MAN**
Recorded:     **4/20/2011** as Instrument No. **20110587995**   of Official Records in the office of the
Recorder of **LOS ANGELES** County, California;

Date of Sale: **5/18/2023 at 9:00 AM**
Place of Sale: **At the Doubletree Hotel Los Angeles-Norwalk, 13111 Sycamore Drive, Norwalk, CA 90650, in the Vineyard Ballroom**
Amount of unpaid balance and other charges: **$189,528.00**
The purported property address is:      **4238 3RD AVE, LOS ANGELES, CA 90008**
Assessor's Parcel No.: **5022-027-023**

TS No.: **CA-22-943930-AB**

**NOTICE TO POTENTIAL BIDDERS:** If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

**NOTICE TO PROPERTY OWNER:** The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call **800-280-2832** for information regarding the trustee's sale or visit this internet website **http://www.qualityloan.com**, using the file number assigned to this foreclosure by the Trustee: **CA-22-943930-AB**. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the internet website. The best way to verify postponement information is to attend the scheduled sale.

**NOTICE TO TENANT:** You may have a right to purchase this property after the trustee auction pursuant to Section 2924m of the California Civil Code. If you are an "eligible tenant buyer," you can purchase the property if you match the last and highest bid placed at the trustee auction. If you are an "eligible bidder," you may be able to purchase the property if you exceed the last and highest bid placed at the trustee auction. There are three steps to exercising this right of purchase. First, 48 hours after the date of the trustee sale, you can call **800-280-2832**, or visit this internet website **http://www.qualityloan.com**, using the file number assigned to this foreclosure by the Trustee: **CA-22-943930-AB** to find the date on which the trustee's sale was held, the amount of the last and highest bid, and the address of the trustee. Second, you must send a written notice of intent to place a bid so that the trustee receives it no more than 15 days after the trustee's sale. Third, you must submit a bid so that the trustee receives it no more than 45 days after the trustee's sale. If you think you may qualify as an "eligible tenant buyer" or "eligible bidder," you should consider contacting an attorney or appropriate real estate professional immediately for advice regarding this potential right to purchase.

**NOTICE TO PROSPECTIVE OWNER-OCCUPANT:** Any prospective owner-occupant as defined in Section 2924m of the California Civil Code who is the last and highest bidder at the trustee's sale shall provide the required affidavit or declaration of eligibility to the auctioneer at the trustee's sale or shall have it delivered to QUALITY LOAN SERVICE CORPORATION by 5 p.m. on the next business day following the trustee's sale at the address set forth in the below signature block.

The undersigned Trustee disclaims any liability for any incorrectness of the property address or other common designation, if any, shown herein. If no street address or other common designation is shown, directions to the location of the property may be obtained by sending a written request to the beneficiary within 10 days of the date of first publication of this Notice of Sale.

If the sale is set aside for any reason, including if the Trustee is unable to convey title, the Purchaser at the sale shall be entitled only to a return of the monies paid to the Trustee. This shall be the Purchaser's sole and exclusive remedy. The purchaser shall have no further recourse against the Trustor, the Trustee, the Beneficiary, the Beneficiary's Agent, or the Beneficiary's Attorney.

TS No.:  **CA-22-943930-AB**

If you have previously been discharged through bankruptcy, you may have been released of personal liability for this loan in which case this letter is intended to exercise the note holders right's against the real property only.

**QUALITY MAY BE CONSIDERED A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

Date: *4-20-53*

**QUALITY LOAN SERVICE CORPORATION**
**2763 Camino Del Rio S**
**San Diego, CA 92108**
**619-645-7711 For NON SALE information only**
Sale Line: 800-280-2832
Or Login to: http://www.qualityloan.com
**Reinstatement Line: (866) 645-7711 Ext 5318**

Quality Loan Service Corporation by: Yolanda Yancy, Assistant Secretary.

# EXHIBIT 5

 

**This page is part of your document - DO NOT DISCARD**



# 20240013680



**Pages:
0005**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**01/08/24 AT 08:00AM**

| | |
|---|---|
| FEES: | 29.00 |
| TAXES: | 3,365.60 |
| OTHER: | 0.00 |
| PAID: | 3,394.60 |



**LEADSHEET**



202401080240013

00024119432



014476825

**SEQ:
01**

**SECURE – 8:00AM**



**THIS FORM IS NOT TO BE DUPLICATED**

E269120

224580009



RECORDING REQUESTED BY
LAWYERS TITLE #224580009
AND WHEN RECORDED MAIL DOCUMENT TO:

Golden Combo Holding And Management
LLC
2967 BLUEGRASS LN
FULLERTON, CA 92835

SPACE ABOVE FOR RECORDER'S USE ONLY

# TRUSTEE'S DEED UPON SALE

### Title of Document

Pursuant to Assembly Bill 1466 – Restrictive Covenant (GC Code Section 27388.2), effective January 1, 2022, a fee of two dollars ($2) for recording the first page of every instrument, paper, or notice required or permitted by law to be recorded per each single transaction per parcel of real property, except those expressly exempted from payment of recording fees, as authorized by each county's board of supervisors and in accordance with applicable constitutional requirements.

Pursuant to Senate Bill 2 – Building Homes and Jobs Act (GC Code Section 27388.1), effective January 1, 2018, a fee of seventy-five dollars ($75.00) shall be paid at the time of recording of every real estate instrument, paper, or notice required or permitted by law to be recorded, except those expressly exempted from payment of recording fees, per each single transaction per parcel of real property. The fee imposed by this section shall not exceed two hundred twenty-five dollars ($225.00).

- [✓] Exempt from the fee per GC 27388.1 (a) (2); This document is subject to Documentary Transfer Tax

- [ ] Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a transfer subject to the imposition of documentary transfer tax (DTT).

- [ ] Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a transfer of real property that is a residential dwelling to an owner-occupier.

- [ ] Exempt from fee per GC 27388.1 (a) (1); fee cap of $225.00 reached.

- [ ] Exempt from the fee per GC 27388.1 (a) (1); not related to real property.

THIS COVER SHEET ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION
($3.00 Additional Recording Fee Applies)

RECORDING REQUESTED BY
LAWYERS TITLE

Recording requested by:

When recorded mail to:

Golden Combo Holding And Management LLC
2967 Bluegrass Ln
Fullerton, CA 92835

Forward tax statements to the address given above

22458009

TS No.: CA-22-943930-AB
Order No.: DEF-489024

Space above this line for recorders use

# Trustee's Deed Upon Sale

A.P.N.: 5022-027-023

THE UNDERSIGNED GRANTOR DECLARES:
The grantee herein WASNT the foreclosing
beneficiary.
The amount of the unpaid debt together with
costs was:                                                                      $195,233.60
The amount paid by the grantee upon the
completion/finalization of the trustee sale was:                                $601,000.00
The documentary transfer tax is:                                    City Transfer Tax $2704.50
Said property is in the City of: LOS ANGELES, County of LOS ANGELES   County Transfer Tax $661.10

QUALITY LOAN SERVICE CORPORATION as Trustee, (whereas so designated in the Deed of Trust hereunder more particularly described or as duly appointed Trustee) does hereby GRANT and CONVEY to:

**Golden Combo Holding And Management LLC**

(herein called Grantee) but without covenant or warranty, expressed or implied, all right title and interest conveyed to and now held by it as Trustee under the Deed of Trust in and to the property situated in the county of **LOS ANGELES**, State of California, described as follows:

THE LAND HEREINAFTER REFERRED TO IS SITUATED IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS: LOT 252 OF TRACT NO. 2195, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 22 PAGE(S) 148 OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

This conveyance is made in compliance with the terms and provisions of the Deed of Trust executed by **JAMES CROSLAND, A SINGLE MAN**, as trustor, dated **4/6/2011**, and recorded on **4/20/2011** as **Instrument No. 20110567995** of Official Records in the office of the Recorder of **LOS ANGELES**, California, under the authority and powers vested in the Trustee designated in the Deed of Trust or as the duly appointed trustee, default having

occurred under the Deed of Trust pursuant to the Notice of Breach and Election to Sell under the Deed of Trust recorded on **1/17/2023**, instrument no **20230033607**, of Official records. The Trustee of record at the relevant time having complied with all applicable statutory requirements of the State of California and performed all duties required by the Deed of Trust including sending a Notice of Default and Election to Sell within ten/thirty days after its recording and a Notice of Sale at least twenty days prior to the Sale Date by certified mail, postage pre-paid to each person entitled to notice in compliance with California Civil Code 2924b.

Default occurred as set forth in a Notice of Default and Election to Sell which was recorded in the office of the Recorder of said County.

All requirements of law regarding the mailing of copies of notices or the publication of a copy of the Notice of Default or the personal delivery of the copy of the Notice of Default and the posting and publication of copies of the Notice of Sale have been complied with.

Said property was sold by said Trustee at public auction on **12/14/2023** at the place named in the Notice of Sale, in the County of **LOS ANGELES,** California, in which the property is situated.  Grantee, being the highest bidder of such sale, became the purchaser of said property and paid the trustee the amount being **$601,000.00** in lawful money of the United States, or by the satisfaction, pro tanto, of the obligations then secured by said Deed of Trust.

This transfer is not subject to the affidavit or declaration requirement in Civil Code Section 2924m(d).

QUALITY MAY BE CONSIDERED A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

TS No.: CA-22-943930-AB

Date: 1/2/2024

**QUALITY LOAN SERVICE CORPORATION**

By: **Adriana Banuelos, Assistant Vice President**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of: **California**)

County of: **San Diego**)

On ___ **JAN 0 2 2024** ___ before me, ___ **Maroun Elias Khater** ___ a notary public, personally appeared ADRIANA BANUELOS , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under *PENALTY OF PERJURY* under the laws of the State of **California** that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.              **(Seal)**

Signature

**Maroun Elias Khater**

MAROUN ELIAS KHATER
Notary Public - California
San Diego County
Commission # 2446516
My Comm. Expires May 9, 2027

# EXHIBIT 6

 

This page is part of your document - DO NOT DISCARD



## 20240013680



**Pages:**
**0005**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**01/08/24 AT 08:00AM**

| | |
|---|---:|
| FEES: | 29.00 |
| TAXES: | 3,365.60 |
| OTHER: | 0.00 |
| PAID: | 3,394.60 |



**L E A D S H E E T**



202401080240013

00024119432



014476825

**SEQ:**
**01**

**SECURE – 8:00AM**



**THIS FORM IS NOT TO BE DUPLICATED**

224580009



RECORDING REQUESTED BY
LAWYERS TITLE #224580009
AND WHEN RECORDED MAIL DOCUMENT TO:

Golden Combo Holding And Management
LLC
2967 BLUEGRASS LN
FULLERTON, CA 92835

SPACE ABOVE FOR RECORDER'S USE ONLY

# TRUSTEE'S DEED UPON SALE

### Title of Document

Pursuant to Assembly Bill 1466 – Restrictive Covenant (GC Code Section 27388.2), effective January 1, 2022, a fee of two dollars ($2) for recording the first page of every instrument, paper, or notice required or permitted by law to be recorded per each single transaction per parcel of real property, except those expressly exempted from payment of recording fees, as authorized by each county's board of supervisors and in accordance with applicable constitutional requirements.

Pursuant to Senate Bill 2 – Building Homes and Jobs Act (GC Code Section 27388.1), effective January 1, 2018, a fee of seventy-five dollars ($75.00) shall be paid at the time of recording of every real estate instrument, paper, or notice required or permitted by law to be recorded, except those expressly exempted from payment of recording fees, per each single transaction per parcel of real property. The fee imposed by this section shall not exceed two hundred twenty-five dollars ($225.00).

☑ Exempt from the fee per GC 27388.1 (a) (2); This document is subject to Documentary Transfer Tax

☐ Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a transfer subject to the imposition of documentary transfer tax (DTT).

☐ Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a transfer of real property that is a residential dwelling to an owner-occupier.

☐ Exempt from fee per GC 27388.1 (a) (1); fee cap of $225.00 reached.

☐ Exempt from the fee per GC 27388.1 (a) (1); not related to real property.

THIS COVER SHEET ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION
($3.00 Additional Recording Fee Applies)

RECORDING REQUESTED BY
LAWYERS TITLE

Recording requested by:

When recorded mail to:

Golden Combo Holding And Management LLC
2967 Bluegrass Ln
Fullerton, CA 92835

Forward tax statements to the address given above

22458 0009

TS No.: CA-22-943930-AB
Order No.: DEF-489024

Space above this line for recorders use

# Trustee's Deed Upon Sale

A.P.N.: 5022-027-023

THE UNDERSIGNED GRANTOR DECLARES:
The grantee herein **WASNT** the foreclosing beneficiary.

| | |
|---|---|
| The amount of the unpaid debt together with costs was: | **$195,233.60** |
| The amount paid by the grantee upon the completion/finalization of the trustee sale was: | **$601,000.00** |

The documentary transfer tax is:     *City Transfer tax $2704.50*

Said property is in the City of: **LOS ANGELES**, County of LOS ANGELES    *County Transfer Tax $661.10*

**QUALITY LOAN SERVICE CORPORATION** as Trustee, (whereas so designated in the Deed of Trust hereunder more particularly described or as duly appointed Trustee) does hereby **GRANT** and **CONVEY** to:

**Golden Combo Holding And Management LLC**

(herein called Grantee) but without covenant or warranty, expressed or implied, all right title and interest conveyed to and now held by it as Trustee under the Deed of Trust in and to the property situated in the county of **LOS ANGELES**, State of California, described as follows:

**THE LAND HEREINAFTER REFERRED TO IS SITUATED IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS: LOT 252 OF TRACT NO. 2195, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 22 PAGE(S) 148 OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.**

This conveyance is made in compliance with the terms and provisions of the Deed of Trust executed by **JAMES CROSLAND, A SINGLE MAN**, as trustor, dated **4/6/2011**, and recorded on **4/20/2011** as **Instrument No. 20110567995** of Official Records in the office of the Recorder of **LOS ANGELES**, California, under the authority and powers vested in the Trustee designated in the Deed of Trust or as the duly appointed trustee, default having

occurred under the Deed of Trust pursuant to the Notice of Breach and Election to Sell under the Deed of Trust recorded on 1/17/2023, instrument no 20230033607, of Official records. The Trustee of record at the relevant time having complied with all applicable statutory requirements of the State of California and performed all duties required by the Deed of Trust including sending a Notice of Default and Election to Sell within ten/thirty days after its recording and a Notice of Sale at least twenty days prior to the Sale Date by certified mail, postage pre-paid to each person entitled to notice in compliance with California Civil Code 2924b.

Default occurred as set forth in a Notice of Default and Election to Sell which was recorded in the office of the Recorder of said County.

All requirements of law regarding the mailing of copies of notices or the publication of a copy of the Notice of Default or the personal delivery of the copy of the Notice of Default and the posting and publication of copies of the Notice of Sale have been complied with.

Said property was sold by said Trustee at public auction on **12/14/2023** at the place named in the Notice of Sale, in the County of **LOS ANGELES**, California, in which the property is situated. Grantee, being the highest bidder of such sale, became the purchaser of said property and paid the trustee the amount being **$601,000.00** in lawful money of the United States, or by the satisfaction, pro tanto, of the obligations then secured by said Deed of Trust.

This transfer is not subject to the affidavit or declaration requirement in Civil Code Section 2924m(d).

QUALITY MAY BE CONSIDERED A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

TS No.: CA-22-943930-AB

Date: 1/2/2024

**QUALITY LOAN SERVICE CORPORATION**

By: **Adriana Banuelos, Assistant Vice President**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of: **California**)

County of: **San Diego**)

On **JAN 0 2 2024** before me, **Maroun Elias Khater** a notary public, personally appeared ADRIANA BANUELOS, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under *PENALTY OF PERJURY* under the laws of the State of **California** that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.      **(Seal)**

Signature

**Maroun Elias Khater**

> MAROUN ELIAS KHATER
> Notary Public - California
> San Diego County
> Commission # 2446516
> My Comm. Expires May 9, 2027

EXHIBIT 7

This page is part of your document - DO NOT DISCARD



# 20240013680



**Pages:**
**0005**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**01/08/24 AT 08:00AM**

|  | |
|---|---|
| FEES: | 29.00 |
| TAXES: | 3,365.60 |
| OTHER: | 0.00 |
| PAID: | 3,394.60 |



**L E A D S H E E T**



202401080240013

00024119432

014476825

**SEQ:**
**01**

SECURE - 8:00AM



**THIS FORM IS NOT TO BE DUPLICATED**

224580009

RECORDING REQUESTED BY
LAWYERS TITLE #224580009
AND WHEN RECORDED MAIL DOCUMENT TO:

Golden Combo Holding And Management
LLC
2967 BLUEGRASS LN
FULLERTON, CA 92835

SPACE ABOVE FOR RECORDER'S USE ONLY

# TRUSTEE'S DEED UPON SALE

### Title of Document

Pursuant to Assembly Bill 1466 – Restrictive Covenant (GC Code Section 27388.2), effective January 1, 2022, a fee of two dollars ($2) for recording the first page of every instrument, paper, or notice required or permitted by law to be recorded per each single transaction per parcel of real property, except those expressly exempted from payment of recording fees, as authorized by each county's board of supervisors and in accordance with applicable constitutional requirements.

Pursuant to Senate Bill 2 – Building Homes and Jobs Act (GC Code Section 27388.1), effective January 1, 2018, a fee of seventy-five dollars ($75.00) shall be paid at the time of recording of every real estate instrument, paper, or notice required or permitted by law to be recorded, except those expressly exempted from payment of recording fees, per each single transaction per parcel of real property. The fee imposed by this section shall not exceed two hundred twenty-five dollars ($225.00).

[✓] Exempt from the fee per GC 27388.1 (a) (2); This document is subject to Documentary Transfer Tax

[ ] Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a transfer subject to the imposition of documentary transfer tax (DTT).

[ ] Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a transfer of real property that is a residential dwelling to an owner-occupier.

[ ] Exempt from fee per GC 27388.1 (a) (1); fee cap of $225.00 reached.

[ ] Exempt from the fee per GC 27388.1 (a) (1); not related to real property.

**THIS COVER SHEET ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION**
**($3.00 Additional Recording Fee Applies)**

RECORDING REQUESTED BY
  LAWYERS TITLE


Recording requested by:

When recorded mail to:

Golden Combo Holding And Management LLC
2967 Bluegrass Ln
Fullerton, CA 92835

Forward tax statements to the address given above

22458000 9
_____
TS No.: CA-22-943930-AB                                    Space above this line for recorders use
Order No.: DEF-489024


# Trustee's Deed Upon Sale

A.P.N.: 5022-027-023

THE UNDERSIGNED GRANTOR DECLARES:
The grantee herein **WASNT** the foreclosing
beneficiary.
The amount of the unpaid debt together with
costs was:                                                              **$195,233.60**
The amount paid by the grantee upon the
completion/finalization of the trustee sale was:       **$601,000.00**
The documentary transfer tax is:                          City Transfer tax  $2,104.50
Said property is in the City of: **LOS ANGELES**, County of **LOS ANGELES**    County Transfer Tax  $661.10

**QUALITY LOAN SERVICE CORPORATION** as Trustee, (whereas so designated in the Deed of Trust hereunder more particularly described or as duly appointed Trustee) does hereby **GRANT** and **CONVEY** to:

**Golden Combo Holding And Management LLC**

(herein called Grantee) but without covenant or warranty, expressed or implied, all right title and interest conveyed to and now held by it as Trustee under the Deed of Trust in and to the property situated in the county of **LOS ANGELES**, State of California, described as follows:

**THE LAND HEREINAFTER REFERRED TO IS SITUATED IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS: LOT 252 OF TRACT NO. 2195, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 22 PAGE(S) 148 OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.**

This conveyance is made in compliance with the terms and provisions of the Deed of Trust executed by **JAMES CROSLAND, A SINGLE MAN**, as trustor, dated **4/6/2011**, and recorded on **4/20/2011** as **Instrument No. 20110567995** of Official Records in the office of the Recorder of **LOS ANGELES**, California, under the authority and powers vested in the Trustee designated in the Deed of Trust or as the duly appointed trustee, default having

occurred under the Deed of Trust pursuant to the Notice of Breach and Election to Sell under the Deed of Trust recorded on 1/17/2023, instrument no 20230033607, of Official records. The Trustee of record at the relevant time having complied with all applicable statutory requirements of the State of California and performed all duties required by the Deed of Trust including sending a Notice of Default and Election to Sell within ten/thirty days after its recording and a Notice of Sale at least twenty days prior to the Sale Date by certified mail, postage pre-paid to each person entitled to notice in compliance with California Civil Code 2924b.

Default occurred as set forth in a Notice of Default and Election to Sell which was recorded in the office of the Recorder of said County.

All requirements of law regarding the mailing of copies of notices or the publication of a copy of the Notice of Default or the personal delivery of the copy of the Notice of Default and the posting and publication of copies of the Notice of Sale have been complied with.

Said property was sold by said Trustee at public auction on **12/14/2023** at the place named in the Notice of Sale, in the County of **LOS ANGELES**, California, in which the property is situated. Grantee, being the highest bidder of such sale, became the purchaser of said property and paid the trustee the amount being **$601,000.00** in lawful money of the United States, or by the satisfaction, pro tanto, of the obligations then secured by said Deed of Trust.

This transfer is not subject to the affidavit or declaration requirement in Civil Code Section 2924m(d).

QUALITY MAY BE CONSIDERED A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

TS No.: CA-22-943930-AB

Date: 1/2/2024

**QUALITY LOAN SERVICE CORPORATION**

By: **Adriana Banuelos, Assistant Vice President**

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

---

State of: **California**

County of: **San Diego**

On **JAN 0 2 2024** _____ before me, **Maroun Elias Khater** _____ a notary public, personally appeared ADRiANA BANUELOS , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under *PENALTY OF PERJURY* under the laws of the State of **California** that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.          **(Seal)**

Signature

**Maroun Elias Khater**

MAROUN ELIAS KHATER
Notary Public - California
San Diego County
Commission # 2446916
My Comm. Expires May 9, 2027

EXHIBIT 8



Shellpoint Mortgage Servicing
P.O. Box 619063
Dallas TX 75261-9063
DO NOT SEND MAIL OR PAYMENTS TO THIS ADDRESS

# shellpoin

A DIVISION OF new

Return Service Requested

||||||||ıןlıₐlı|lᵗʰlⁱₗₐₗₒₗₗ|lⁱⁱᵗʰlᵢⱼₗₗₗ|ₗ|ₗ|ⁱⁱⁱₐₐₗⁱₐⱼⱼₗⱼₗₐ



2-811-29472-0009066-002-1-100-010-000-000

ESTATE OF JAMES CROSLAND
4238 3RD AVE
LOS ANGELES CA  90008-4010

| CONTACT INFORMATION | |
| --- | --- |
| Correspondence: | P.O. Box 10826 |
| | Greenville, SC 29603 |
| Business Hours: | Monday - Friday 8:00AM-9:00PM |
| | Saturday 10:00AM-2:00PM |
| Phone: 800-365-7107 | |
| Fax: 866-467-1137 | |
| Website: www.shellpointmtg.com | |

October 6, 2023
Loan Number:        9801590622
Property Address:   4238 3RD AVE
                    LOS ANGELES CA 90008

Dear Estate Of James Crosland:

Welcome to **Shellpoint Mortgage Servicing ("Shellpoint")**! We're excited to let you know that your loan has been transferred to us for servicing.

The servicing of your mortgage is being transferred.  As of October 1, 2023, we will begin servicing your mortgage loan instead of Caliber Home Loans, Inc.. This means we will process payments and pay taxes, insurance, and more for your loan.

Making your payments.
- Starting on October 1, 2023, make your mortgage payments payable to **Shellpoint Mortgage Servicing** at the address shown on the attached payment coupon.
- Your prior servicer, Caliber Home Loans, Inc., will stop accepting payments on October 1, 2023 and we will start accepting mortgage payments this same day.
- **Please use the attached coupon to mail us a check for your first payment. Starting with your next payment, we will send you regular monthly statements that include payment coupons.**

Other payment options.  Don't want to write monthly checks? You have options:
- **Free automatic withdrawal** from your bank account (also called "ACH").
- **Online** payments (via our website).
- **Pay by phone** (using either our automated phone system or by speaking with a live Customer Care representative).

Manage your mortgage online.  To better manage your mortgage account, visit our website at shellpointmortgageservicing.com for a set of easy-to-use online tools. After you have set up your account, you can make payments, view and print statements, get answers to common questions, chat with a live representative, and more.

Call us anytime at **800-365-7107**. Our **24-hour automated phone system** gives you 24-hour access to your account, so you can make payments, check payment status, get answers to common questions, and access a wide range of account information. If you need to speak with our Customer Care Team, please call Monday through Friday 8:00AM-9:00PM, and Saturday 10:00AM-2:00PM (Eastern time).

Were you working on a loss mitigation plan? If you were engaged in a loss mitigation plan or evaluation  with your previous servicer – or if you applied for such a plan – please allow us approximately ten business days from the date of the servicing transfer to incorporate your data into our systems and ensure a smooth transition from your prior servicer. Once your account is set up, we will contact you to provide information about next steps and respond to any further inquiries you may have. If necessary, we will contact your previous servicer to obtain missing documents.

10-M 101 Loan Number: 9801590622  Version Date: 08012023

P.O. BOX 51850
LIVONIA MI 48151-5850
RETURN SERVICE REQUESTED

# shellpoint
a division of new rez



S-SFRECS20 L-1070 R-204
PIRFDU00201200 - 755870616 I04798
ESTATE OF JAMES CROSLAND
4238 3RD AVE
LOS ANGELES CA 90008-4010

| CONTACT INFORMATION | |
|---|---|
| Correspondence: | P.O. Box 10826 |
| | Greenville, SC 29603-0826 |
| Business Hours: | Monday - Friday: 8:00AM-9:00PM |
| | Saturday: 8:00AM-1:00PM |
| Phone Number: | 866-214-5733 |
| Fax: | 866-467-1187 |
| Email: | Lossmitigation@shellpointmtg.com |
| Website: | www.shellpointmtg.com |

Loan Number:      9801590622
Principal Balance: $161,035.51
Property:         4238 3RD AVE
                  LOS ANGELES, CA 90008

10/06/2023

**United States Department of Housing and Urban Development**
**Office of Housing**
**Servicemembers Civil Relief Act Notice Disclosure**

Dear Homeowner(s):

**Legal Rights and Protections Under the SCRA**

Servicemembers on "active duty" or "active service," or a spouse or dependent of such a servicemember may be entitled to certain legal protections and debt relief pursuant to the Servicemembers Civil Relief Act (50 USC §§ 3901-4043) (SCRA).

**Who May Be Entitled to Legal Protections Under the SCRA?**

- Regular members of the U.S. Armed Forces (Army, Navy, Air Force, Marine Corps and Coast Guard)
- Reserve and National Guard personnel who have been activated and are on Federal Active Duty
- National Guard personnel under a call or order to active duty for more than 30 consecutive days under section 502(f) of title 32, United States Code, for purposes of responding to a national emergency declared by the President and supported by Federal funds
- Active service members of the commissioned corps of the Public Health Service and the National Oceanic and Atmospheric Administration
- Certain United States citizens serving with the armed forces of a nation with which the United States is allied in the prosecution of a war or military action

**What Legal Protections are Servicemembers Entitled to Under the SCRA?**

- The SCRA states that a debt incurred by a servicemember, or servicemember and spouse jointly, prior to entering military service shall not bear interest at a rate above six percent during the period of military service and one year thereafter, in the case of an obligation or liability consisting of a mortgage, trust deed, or other security in the nature of a mortgage, or during the period of military service in the case of any other obligation or liability.
- The SCRA states that in a legal action to enforce a debt against real estate that is filed during, or within twelve months after the servicemember's military service, a court may stop the proceedings for a period of time, or adjust the debt. In addition, the sale, foreclosure, or seizure of real estate shall not be valid if it occurs during, or within one year after the servicemember's military service unless the creditor has obtained a court order approving the sale, foreclosure, or seizure of the real estate.
- The SCRA contains many other protections besides those applicable to home loans.

**SEE REVERSE SIDE OR ATTACHED FOR AN IMPORTANT STATEMENT OF YOUR RIGHTS.**

1070 204 Loan Number: 9801590622 Version: 07072022

P I000004 A- 0202300

P.O. BOX 51850
LIVONIA MI 48151-5850
RETURN SERVICE REQUESTED







S-SFRECS20 L-1031 R-204
PIT47500300035 - 756681127 I00716
ESTATE OF JAMES CROSLAND
4238 3RD AVE
LOS ANGELES CA 90008-4010

| CONTACT INFORMATION | |
|---|---|
| Correspondence: | P.O. Box 10826 |
| | Greenville, SC 29603-0826 |
| Business Hours: | Monday - Friday: 8:00AM-9:00PM |
| | Saturday: 8:00AM-1:00PM |
| Phone Number: | 866-214-5733 |
| Fax: | 866-467-1187 |
| Email: | Lossmitigation@shellpointmtg.com |
| Website: | www.shellpointmtg.com |

Loan Number:      9801590622
Property Address: 4238 3RD AVE
                  LOS ANGELES, CA 90008

10/16/2023

Dear Homeowner,

We understand that financial circumstances may change from time to time, which can affect your ability to meet your obligations. We're concerned about your recently missed mortgage payment(s) and want to offer our assistance in case you are unable to catch up.

This is a legally required notice. We are sending this notice to you because you are behind on your mortgage payment(s). As of the date of this letter, the total amount due is $43,658.66. Because interest, late charges, and other fees vary from day to day, the amount you owe may change. We want to notify you of possible ways to avoid losing your home. We have a right to invoke foreclosure based on the terms of your mortgage contract. Please read this letter carefully.

**Important note:** We have assigned a Single Point of Contact (SPOC) to assist you through the loss mitigation process concerning your mortgage loan. We will perform an evaluation of your financial condition and determine your qualifications for all alternatives that may be applicable for this account. Should you have any questions, you can also visit our Borrower Web Portal at www.shellpointmtg.com to apply for assistance, upload application documents, or contact us through our Secure Message Center. You can also contact our SPOC department at 866-214-5733. Documents can also be faxed to us at 866-467-1187. Please reference your loan number when contacting us regarding this request.

If you have been impacted by COVID-19, you may qualify for a forbearance plan. If you qualify for a forbearance plan, you may be able to temporarily put a pause on your monthly mortgage payments. During this "forbearance period" you are not required to make your monthly mortgage payments, you will not be assessed any late charges, and negative credit reporting on your loan will be suspended. This means you will not be marked "late" for any suspended payments. Prior to the end of the forbearance period, you will need to contact us again to discuss a permanent payment option and solution.

If your loan was transferred from another servicer and you have entered into an approved loss mitigation plan with your prior loan servicer or if you had a loss mitigation application in process with your prior servicer, please contact us to confirm that the loss mitigation plan information, or application and documentation, were properly transferred to Shellpoint Mortgage Servicing. We will follow up with your prior servicer to receive the documents you provided them or they provided you in response.

---

### We Are Here to Help - Call Us at 866-214-5733

Let us work with you to understand the issues affecting your mortgage payments. We'll explore what assistance may be available to you and discuss the forms and documentation needed to determine if you qualify for an option to avoid foreclosure.
**Consulte la página siguiente para obtener más información importante sobre cómo comunicarse con nosotros, las opciones disponibles y la información del consejero de vivienda en español.**

---

### Options May Be Available

The right option for you depends on your individual circumstances. When you provide the required information and documentation about your situation, we can determine if you qualify for temporary or long-term relief, including mortgage options that may allow you to stay in your home or leave your home while avoiding foreclosure.

If you need help, the following options may be possible (most are subject to lender approval):

· Refinance your loan with us or another lender;
· Modify your loan terms with us;
· Payment forbearance temporarily gives you more time to pay your monthly payment; or

**SEE REVERSE SIDE OR ATTACHED FOR AN IMPORTANT STATEMENT OF YOUR RIGHTS.**

P.O. BOX 51850
LIVONIA MI 48151-5850
RETURN SERVICE REQUESTED

## shellpoint
A DIVISION OF NEWREZ



S-SFRECS20 L-1031 R-204
PIT47500300035 - 756881127 I00718
ESTATE OF JAMES CROSLAND
4238 3RD AVE
LOS ANGELES CA 90008-4010

| CONTACT INFORMATION | |
|---|---|
| Correspondence: | P.O. Box 10826 |
| | Greenville, SC 29603-0826 |
| Business Hours: | Monday - Friday: 8:00AM-9:00PM |
| | Saturday: 8:00AM-1:00PM |
| Phone Number: | 866-214-5733 |
| Fax: | 866-467-1187 |
| Email: | Lossmitigation@shellpointmtg.com |
| Website: | www.shellpointmtg.com |

Loan Number:      9801590622
Property Address: 4238 3RD AVE
                  LOS ANGELES, CA 90008

10/16/2023

In accordance with the Taxpayer First Act, as your loan servicer, we are required to obtain your consent to be able to share your tax information with another party. Such sharing would extend to actual or potential owners of the loan or any other loan participant. Please sign and date this Taxpayer Consent Form and return it to us.

### TAXPAYER CONSENT FORM

I understand, acknowledge, and agree that Shellpoint Mortgage Servicing and Other Loan Participants can obtain, use and share tax return information for purposes of (i) providing an offer; (ii) originating, maintaining, managing, monitoring, servicing, selling, insuring, and securitizing a loan; (iii) marketing; or (iv) as otherwise permitted by applicable laws, including state and federal privacy and data security laws. Shellpoint Mortgage Servicing includes Shellpoint Mortgage Servicing's affiliates, agents, service providers and any of aforementioned parties' successors and assigns. The Other Loan Participants includes any actual or potential owners of a loan resulting from your loan application, or acquirers of any beneficial or other interest in the loan, any mortgage insurer, guarantor, any servicers or service providers for these parties and any of aforementioned parties' successors and assigns.

ESTATE OF JAMES CROSLAND _____          _____ Date

Shellpoint Mortgage Servicing
P.O. Box 10826
Greenville, SC 29603-0826

**Secretary of State**
**Certificate of Cancellation**
**Limited Liability Company (LLC)**

**LLC-4/7**

For Office Use Only

**-FILED-**

File No.: BA20230748332
Date Filed: 4/28/2023

There is **No Fee** for filing a Certificate of Cancellation

**Certification Fee (Optional) – $5.00**

This Space For Office Use Only

**1. Limited Liability Company Name** (Enter the exact name of the LLC as it is recorded with the California Secretary of State)

SHELLPOINT MORTGAGE SERVICING LLC

**2. LLC Entity (File) Number** (Enter the exact 12-digit Entity (File) Number issued by the California Secretary of State.)

| 2 | 0 | 2 | 1 | 2 | 3 | 5 | 1 | 0 | 1 | 0 | 1 |
|---|---|---|---|---|---|---|---|---|---|---|---|

**3. Dissolution** (California LLCs ONLY: Check the box if the vote to dissolve was made by the vote of **ALL** the members.)

☑ The dissolution was made by a vote of **ALL** of the members of the California Limited Liability Company.

**Note:** If the above box is not checked, a **Certificate of Dissolution** (Form LLC-3) must be filed prior to or together with this Certificate of Cancellation. (California Corporations Code section 17707.08(a).)

**4. Tax Liability Statement** (Do not alter the Tax Liability Statement.)

All final returns required under the California Revenue and Taxation Code have been or will be filed with the California Franchise Tax Board.

**5. Cancellation Statement** (Do not alter the Cancellation Statement.)

Upon the effective date of this Certificate of Cancellation, except as provided in California Corporations code Section 17707.06, the Limited Liability Company's registration is cancelled and its powers, rights, and privileges will cease in California.

**6. Read and Sign Below** (Do not use a computer generated signature.)

By signing, I affirm under penalty of perjury that the information herein is true and correct and that I am authorized by California law to sign.

Signature _____

john brosnan
Type or Print Name

Signature _____

Type or Print Name

Signature _____

Type or Print Name

LLC-4/7 (REV 12/2022)

2022 California Secretary of State
bizfileOnline.sos.ca.gov

8 Cal.4th 1220 (1994)

885 P.2d 877

36 Cal. Rptr.2d 464

## FORD & VLAHOS, Plaintiff, Cross-defendant and Appellant,

v.

## ITT COMMERCIAL FINANCE CORP., Defendant, Cross-complainant and Appellant.

Docket No. S035748.

Supreme Court of California.

December 15, 1994.

COUNSEL

Kline & Joseph, Stephen L. Joseph, Richard Collier Sears, Nossaman, Guthner, Knox & Elliott, William T. Bagley and Douglas J. Maloney for Plaintiff, Cross-defendant and Appellant.

Christopher M. Micheli and Nancy M. McDonough as Amici Curiae on behalf of Plaintiff, Cross-defendant and Appellant.

Howard, Rice, Nemerovski, Canady, Robertson & Falk, Howard, Rice, Nemerovski, Canady, Robertson, Falk & Rabkin, Jerome B. Falk, Jr., Bernard A. Burk and Matthew F. Weil for Defendant, Cross-complainant and Appellant.

Christopher E. Chenoweth as Amicus Curiae on behalf of Defendant, Cross-complainant and Appellant.

OPINION

MOSK, J.

This case presents a narrow question of law: whether the California version of Uniform Commercial Code section 9-504, subdivision (3), definitively limits a secured party's duty to advertise the sale of collateral merely to placing a legal notice in a newspaper. We conclude it does not, and therefore reverse the Court of Appeal's judgment and remand the case for consideration of the secured party's other claims of error.

Defendant secured party lent plaintiff debtor money to buy a Lockheed Hercules C-130A aircraft and acquired a purchase-money security interest in it. The parties agreed that California law would govern the security agreement.

Plaintiff defaulted on the loan and was notified by defendant that it would repossess the aircraft. On August 26, 1987, defendant informed plaintiff it would hold a public sale of the C-130A on September 3 at Chandler, Arizona.

On August 28, 1987, defendant advertised the sale's time and place in the Arizona Republic, a newspaper of general circulation in Maricopa County, Arizona, where Chandler is located. The advertisement stated that the United States Department of State would have to approve "the purchaser and the secured party's right to bid [on] and purchase" the aircraft. But the advertisement apparently inadvertently omitted the information about whom to contact to qualify as a bidder. That error caused defendant to place a corrected advertisement in the Phoenix (Arizona) Gazette on September 2.

Defendant, the sole bidder at the auction, bought the C-130A the next day for $1 million. After the sale defendant's agent advertised the aircraft in Trade-A-Plane. The agent testified that Trade-A-Plane is "the Bible of aircraft sales in this country." In March 1988 defendant agreed to sell the C-130A to African Air Trans, Inc., for $1,525,000, eventually, according to defendant, receiving $1,487,000 from that company.

Plaintiff sued for improper disposition of the collateral and defendant cross-complained for a deficiency plaintiff allegedly

8 Cal.4th 1220 (1994)
885 P.2d 877
36 Cal. Rptr.2d 464

FORD & VLAHOS, Plaintiff, Cross-defendant and Appellant,

v.

ITT COMMERCIAL FINANCE CORP., Defendant, Cross-complainant and Appellant.

Docket No. S035748.

Supreme Court of California.

December 15, 1994.

COUNSEL

Kline & Joseph, Stephen L. Joseph, Richard Collier Sears, Nossaman, Guthner, Knox & Elliott, William T. Bagley and Douglas J. Maloney for Plaintiff, Cross-defendant and Appellant.

Christopher M. Micheli and Nancy M. McDonough as Amici Curiae on behalf of Plaintiff, Cross-defendant and Appellant.

Howard, Rice, Nemerovski, Canady, Robertson & Falk, Howard, Rice, Nemerovski, Canady, Robertson, Falk & Rabkin, Jerome B. Falk, Jr., Bernard A. Burk and Matthew F. Weil for Defendant, Cross-complainant and Appellant.

Christopher E. Chenoweth as Amicus Curiae on behalf of Defendant, Cross-complainant and Appellant.

OPINION

MOSK, J.

This case presents a narrow question of law: whether the California version of Uniform Commercial Code section 9-504, subdivision (3), definitively limits a secured party's duty to advertise the sale of collateral merely to placing a legal notice in a newspaper. We conclude it does not, and therefore reverse the Court of Appeal's judgment and remand the case for consideration of the secured party's other claims of error.

Defendant secured party lent plaintiff debtor money to buy a Lockheed Hercules C-130A aircraft and acquired a purchase-money security interest in it. The parties agreed that California law would govern the security agreement.

Plaintiff defaulted on the loan and was notified by defendant that it would repossess the aircraft. On August 26, 1987, defendant informed plaintiff it would hold a public sale of the C-130A on September 3 at Chandler, Arizona.

On August 28, 1987, defendant advertised the sale's time and place in the Arizona Republic, a newspaper of general circulation in Maricopa County, Arizona, where Chandler is located. The advertisement stated that the United States Department of State would have to approve "the purchaser and the secured party's right to bid [on] and purchase" the aircraft. But the advertisement apparently inadvertently omitted the information about whom to contact to qualify as a bidder. That error caused defendant to place a corrected advertisement in the Phoenix (Arizona) Gazette on September 2.

Defendant, the sole bidder at the auction, bought the C-130A the next day for $1 million. After the sale defendant's agent advertised the aircraft in Trade-A-Plane. The agent testified that Trade-A-Plane is "the Bible of aircraft sales in this country." In March 1988 defendant agreed to sell the C-130A to African Air Trans, Inc., for $1,525,000, eventually, according to defendant, receiving $1,487,000 from that company.

Plaintiff sued for improper disposition of the collateral and defendant cross-complained for a deficiency plaintiff allegedly

owed after credit for the $1 million foreclosure-sale bid.

The trial court found the aircraft's sale commercially unreasonable because accompanied by insufficient publicity and hence the subject of too few bids. The court also found the notices of sale "legally insufficient" for various reasons. The court's statement of decision recited:

"The only notice of the auction was the *Arizona Republic* newspaper ad placed in the auction section of the newspaper. The ad contained an incomplete sentence regarding qualifications to purchase.

"The Court finds that a correction appeared in the *Phoenix Gazette* on September 2, 1987, one day prior to the auction.

"The Court finds that there was no evidence that the *Arizona Republic* or *Phoenix Gazette* were publications circulated among or read by potential purchasers of this Aircraft.

"The Court finds that no publicity for the September auction sale was given in aviation trade journals, such as *Trade-A-Plane*. ...

"The Court concludes that publication of a notice for the September 3 auction of this Aircraft in the *Phoenix Gazette* was legally insufficient to satisfy [California Uniform Commercial Code section] 9504 in that it did not conform to the five-day time requirement of the statute.

    "The Court finds that the *Arizona Republic* notice affirmatively stated that prequalification as a bidder was necessary.

"The Court concludes that the omission of any contact name or telephone number to obtain prequalification information rendered the *wording* contained in the *Arizona Republic* notice legally insufficient under [California Uniform Commercial Code section] 9504....

"The Court finds that, other than the newspaper notices, Defendant ITT made no efforts to contact potential purchasers regarding the September 3 auction.

"The Court finds that Defendant ITT had available to it the resources of an aircraft broker ... who knew potential aircraft buyers and the means of publicity to announce aircraft auctions....

"The Court concludes that Defendant ITT did not conduct the auction sale on September 3, 1987 in good faith and in a commercially reasonable manner as required by [California Uniform Commercial Code section] 9504...."

With regard to the collateral's value, the court ruled, "based on ... expert opinion testimony ..., that the fair market value of the Aircraft on the date of sale, September 3, 1987, was $3.8 million."

On the basis of that valuation, the court set plaintiff's damages at $3.8 million, but granted defendant an offset of $996,050, a figure representing the sum of plaintiff's debt to defendant and defendant's expenses in repossessing, refurbishing and selling the aircraft. The ensuing judgment netted plaintiff $2,803,950.

The Court of Appeal reversed the judgment in part. As relevant here, the majority decided the Legislature had created a "safe harbor" in California Uniform Commercial Code section 9504, subdivision (3) — unlabeled statutory references are to this code — whereby satisfying the statute's notice requirement precluded any challenge to the sale's commercial reasonableness on the basis of inadequate publicity. The majority wrote, "ITT [defendant] contends that by specifying the time and manner for notice of a public sale, our Legislature intended to establish a bright-line rule to prevent disputes over the `reasonableness' of presale publicity. This contention is supported by the legislative history of section 9504(3)." Thus, the majority        reasoned, "Compliance with the letter of section 9504(3) creates a safe harbor against claims that the publicity for a public sale was inadequate." Acknowledging that "there may be situations ... where such a limited notice would seem less than fair," the majority stated in essence that any complaints should be addressed to the Legislature. The majority thus rejected the reasoning of *American Business Credit Corp.* v. *Kirby* (1981) 122 Cal. App.3d 217, 221 [175 Cal. Rptr. 720], and *Clark Equipment Co.* v. *Mastelotto, Inc.* (1978) 87 Cal. App.3d 88, 96-97 [150

Cal. Rptr. 797], "cases that have suggested, contrary to our conclusion, that a single, timely newspaper notice might not be sufficient," because those cases "did not consider section 9504(3)'s legislative history, or address whether the statute's notice provisions were meant to conclusively establish what is required to publicize an auction of collateral."

The dissent declared that the majority's bright-line rule was unfounded. Citing the cases mentioned above, the dissent observed that, "In each of these cases the court treated adequate notice and publicity adequate to be commercially reasonable as two distinct inquiries. Adequate notice, that is notice which met the minimum requirements of the subdivision, did not define the scope of commercially reasonable publicity or advertising." The dissent continued, "In my view the specific notice requirements imposed by the section define the minimum notice which must be given. I do not, unlike the majority, construe *notice* to be coextensive with *publicity.* The duty to publicize a sale adequately arises from the general duty of the creditor to act `in a commercially reasonable manner.' What is commercially reasonable publicity must turn on the specific circumstances of what the collateral is and how it is to be sold. [¶] ... The published notice given here was not, standing alone, commercially reasonable publicity for the sale of a multimillion dollar aircraft."

Because the Court of Appeal majority concluded that the Legislature had conclusively defined the publicity required for a sale of foreclosed collateral, it did not address defendant's other claims of error, including contentions regarding the court's calculation of the aircraft's value, its valuation of defendant's expenses attendant to repossessing and selling the aircraft, and its asserted refusal to find that plaintiff was not the real party in interest.

We granted plaintiff debtor's petition for review. For its part, defendant secured party requests that we take judicial notice of certain materials bearing on legislative intent. That request, which is unopposed, is also granted. (Evid. Code, §§ 452, subds. (c), (h), 459, subd. (a).)

(1a) Defendant contends that the references to notice in subdivision (3) of section 9504 conclusively define the publicity required for a public sale of foreclosed collateral. Defendant reasons that because it met the statute's notice requirements, the court could not properly find the sale commercially unreasonable for want of sufficient publicity. In sum, it contends the Court of Appeal majority correctly understood the meaning of section 9504, subdivision (3).

We interpret the California Uniform Commercial Code otherwise. As we will describe, notice on the one hand, and publicity or advertising on the other, are separate but related concepts under the California Uniform Commercial Code. (We define advertising broadly as all efforts to alert possible buyers to an impending sale, including professionally designed displays in public media and flyers or brochures circulated to a narrower audience.)

The Legislature enacted a modified form of Uniform Commercial Code section 9-504, subdivision (3). (Compare Stats. 1963, ch. 819, § 1, pp. 1993-1994, with 3B West's U. Laws Ann. (1992) U. Com. Code, pp. 127-129.) Having been amended in certain minor respects irrelevant to our inquiry, section 9504, subdivision (3), now provides in relevant part: "A sale or lease of collateral may be as a unit or in parcels, at wholesale or retail and at any time and place and on any terms, provided the secured party acts in good faith and in a commercially reasonable manner. [Ordinarily] the secured party must give to the debtor ... and to any other person who has a security interest in the collateral and who has filed with the secured party a written request for notice ..., a notice in writing of the time and place of any public sale or of the time on or after which any private sale or other intended disposition is to be made. Such notice must be delivered personally or be deposited in the United States mail postage prepaid addressed to the debtor ... and to any other secured party ... at least five days before the date fixed for any public sale or before the day on or after which any private sale or other disposition is to be made. Notice of the time and place of a public sale shall also [ordinarily] be given at least five days before the date of sale by publication once in a newspaper of general circulation published in the county in which the sale is to be held.... The secured party may buy at any public sale and if the collateral is customarily sold in a recognized market or is the subject of widely or regularly distributed standard price quotations he or she may buy at private sale. Any sale of which notice is      delivered or mailed and published as herein provided and which is held as herein provided is a public sale."[1]

By its plain terms, section 9504, subdivision (3), provides that the secured party is to "act[ ] in good faith and in a commercially reasonable manner" when auctioning foreclosed personalty. (See also § 1203.) The term "commercially reasonable" is again articulated, and is partially defined, in section 9507, subdivision (2), which provides in relevant part,

"The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner. If      the secured party either sells the collateral in the usual manner in any recognized market therefor or if he sells at the price current in such market at the time of his sale or if he has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold he has sold in a commercially reasonable manner."[2]

Read together, sections 9504, subdivision (3), and 9507, subdivision (2), cast considerable doubt on the Court of Appeal majority's view that as long as the statutory notice requirements are met, the publicity attending a sale of foreclosed collateral is deemed to be commercially reasonable. Section 9507 provides that property sold by methods a responsible dealer would utilize is sold in a commercially reasonable manner. A dealer in the type of property repossessed here — a valuable airplane — surely would advertise its auction in the relevant market by, for example, informing brokers, placing reasonably prominent announcements in recognized trade journals, or contacting individuals or entities known to be seeking an airplane of the type for sale. (See _Grumman Credit_ v. _Rivair Flying Service_ (Okla. 1992) 845 P.2d 182, 186 [845 P.2d 182]; _Contrail Leasing Partners_ v. _Consolidated Airways_ (7th Cir.1984) 742 F.2d 1095, 1099; _C.I.T. Corporation_ v. _Lee Pontiac, Inc._ (9th Cir.1975) 513 F.2d 207, 210.) To be sure, nowhere does subdivision (2) of section 9507 explicitly state that failing to sell collateral of this type as would a responsible dealer makes the sale commercially unreasonable. But it is difficult to read the law any other way with regard to the valuable type of collateral at issue here. (See _Canadian Commercial Bank_ v. _Ascher Findley Co._ (1991) 229 Cal. App.3d 1139, 1149 [280 Cal. Rptr. 521] ["A commercially reasonable disposition is presumed to be in good faith and at the greatest possible market rate."].)

And yet defendant's interpretation of section 9504, subdivision (3), would simply nullify section 9507, subdivision (2), whenever complying with the former statute's formal notice requirements would not yield the kind of      publicity a responsible dealer would generate to sell a chattel of the type foreclosed. We cannot conclude that the Legislature meant to provide that a sale's advertising is commercially reasonable as long as the bare requirements of formal notice are met, even if, to sell the type of collateral involved, a responsible dealer would employ more extensive advertising than placing a legal notice in agate type in an obscure newspaper. Publicity is much too important to a proper sale of foreclosed collateral for such a hypothesis to be commercially viable. (2) For advertising is sine qua non to attendance at an auction, and as then-Presiding Justice Panelli explained in _Ford Motor Credit Co._ v. _Price_ (1985) 163 Cal. App.3d 745, 751 [210 Cal. Rptr. 17], "Common sense tells us that the larger the attendance at a public sale of collateral, the more likely it is that there will be competitive bidding. Competitive bidding helps to assure that the purchase price approximates the fair market value of the property and also prevents a [secured party] from exaggerating his deficiency by underbidding." Hence, "[o]ne of the most important elements of commercial reasonableness is the duty to surround the sale with publicity sufficient to attract a `lively concourse of bidders.'" (_Westgate State Bank_ v. _Clark_ (1982) 231 Kan. 81 [642 P.2d 961, 970].)

(1b) The importance of advertising as an element of commercial reasonableness was emphasized in _Villella Enterprises, Inc._ v. _Young_ (1988) 108 N.M. 33 [766 P.2d 293], the facts of which are similar to those the trial court found here. "We are particularly concerned with the minimal effort exerted by Villella to notify the public of the sale. Notice of sale should be given to a `public' reasonably expected to have an interest in the collateral and should be `published in a manner reasonably calculated to assure such publicity that the collateral will bring the best possible price from competitive bidding of a strived-for lively concourse of bidders.' [Citations.] Villella placed an add only in the _Health City Sun,_ a weekly legal periodical, two weeks prior to the sale. No evidence was produced that the _Health City Sun_ is the type of publication that would reach prospective bidders for the assets of a bar business. [Citations.] Neither is there any indication that Villella contacted the individuals who had offered ... to purchase [the business] ... even though he was aware of their identities." (_766 P.2d at p. 297;_ see also _Commercial Credit Equipment_ v. _Persons_ (Mo. Ct. App. 1991) 820 S.W.2d 315, 323; _Farmers Equipment Company_ v. _Miller_ (1972) 252 Ark. 1092 [482 S.W.2d 805, 809-810]; _Levers_ v. _Rio King Land & Inv. Co._ (1977) 93 Nev. 95 [560 P.2d 917, 920].)

The foregoing reasoning clearly applies to the sale of an airplane. (_Dynalectron Corporation_ v. _Jack Richards Aircraft Co._ (W.D.Okla. 1972) 337      F. Supp. 659, 662-663.) "Although [secured party] offered testimony that it gave notice of the sale orally to all major airplane brokers in the United States, the judge disbelieved this testimony, and we cannot

say he was clearly wrong to do so. So far as appears, all [secured party] did in the way of notice was to place an inconspicuous ad in one publication of the used-aircraft trade.... There was testimony that a serious effort to interest potential buyers would have required a more conspicuous ad plus advertising in other trade publications as well. The fact that no one showed up for the sale except [secured party] is consistent with the fact that [it] made little effort, on this occasion anyway, to sell the plane." (*Contrail Leasing Partners v. Consolidated Airways, supra,* 742 F.2d at p. 1099.)

Our analysis cannot end at this point, however. Defendant has consistently maintained that although a public sale's "time," "place," and "terms" must be "commercially reasonable" (§ 9504, subd. (3)), notice need not meet that standard, because the Legislature specified the notice required, commercially reasonable or not, to the exclusion of any other rule, and we are not free to simply cast aside that language, regardless of the logic of our reasoning. In sum, defendant might assert that just as we conclude defendant's view of notice and advertising would, if adopted, nullify section 9507, subdivision (2) (*ante,* pp. 1229-1230), our discussion in turn renders the notice language of section 9504, subdivision (3), ineffectual, and that "'[a] construction which makes sense of an apparent inconsistency is to be preferred to one which renders statutory language useless or meaningless.'" (*Hartford Fire Ins. Co. v. Macri* (1992) 4 Cal.4th 318, 326 [14 Cal. Rptr.2d 813, 842 P.2d 112].)

Such an equivalence would be false, however. It could only arise under a mistaken view that the Legislature merged adequate advertising and formal notice into a single requirement for a valid foreclosure sale. In fact the requirements of proper notice and of commercial reasonableness, including reasonable advertising, are distinct, although, as we explain *post,* page 1233, notice by publication is a form of advertising and therefore fulfilling the notice-by-publication requirement will in some circumstances satisfy the requirement of adequate promotion of a sale. (*Am. State Bank of Killdeer v. Hewson* (N.D. 1987) 411 N.W.2d 57, 60] [discussing the "twofold obligation ... to conduct the sale of the collateral in a commercially reasonable manner and to provide `reasonable notification of the time and place of any public sale'"]; *Levers v. Rio King Land & Inv. Co., supra,* 560 P.2d 917, 919-920 ["In addition to giving reasonable notice, a secured party must, after default, proceed in a commercially reasonable manner to dispose of collateral."]; *Clark Equipment Co. v. Mastelotto, Inc., supra,* 87 Cal. App.3d 88, 96.)

(3) The purpose of notice to the debtor and to other secured creditors under the California Uniform Commercial Code is to alert them that their interests may be extinguished very soon. This concept derives from the venerable American legal rule that a private creditor must give formal legal notice before selling a debtor's property at public auction. (*Newman v. Jackson* (1827) 25 U.S. [12 Wheat.] 570, 572-574 [6 L.Ed. 732, 732-733]; see 1 Glenn on Mortgages (1943) § 107, p. 644.) Because a nonjudicial foreclosure sale is a "summary sale" (*Podrat v. Oberndorff* (1929) 207 Cal. 457, 459 [278 P. 1035, 63 A.L.R. 1308] [discussing pledges and chattel mortgages]) that the secured party is entitled to conduct relatively quickly (see 2 White & Summers, Uniform Commercial Code (3d ed. 1988) § 27-12, p. 605), elementary fairness to the debtor requires that it, other interested parties, and the public receive formal notice so as to protect the debtor from another's self-dealing or an unfairly low auction price (4 Casner, American Law of Property (1952) Mortgages, § 16.207, pp. 505-509).

Such notice requirements have existed in California for many decades. (Civ. Code, §§ 2924f, subd. (b)(1), 2924g, subd. (a) [public auction of real property foreclosed under power of sale]; *Sargent v. Shumaker* (1924) 193 Cal. 122, 125 [223 P. 464].) Hence it is wholly unremarkable that a notice requirement found its way into California's version of subdivision (3)(b) of section 6 of the Uniform Trust Receipts Act (1933) (quoted in 9C Thompson's U. Laws Ann. (1957) at p. 247), an immediate predecessor to section 9504 (see 3B West's U. Laws Ann., *supra,* U. Com. Code, com. to § 9-504, p. 129). The California trust receipts law provided that if a trustee defaulted, an entruster in possession of the goods might "on or after default, give notice to the trustee of intention to sell, and may, not less than five days after the serving or sending of such notice, sell the goods ... at public or private sale, and may at a public sale himself become a purchaser.... Notice of sale shall be deemed sufficiently given if in writing, and either (i) personally served on the trustee, or (ii) sent by postpaid ordinary mail to the trustee's last known business address." (Former Civ. Code, § 3016.2, subd. (3)(b), added by Stats. 1935, ch. 716, § 1, pp. 1930, 1934-1935, and repealed by Stats. 1963, ch. 819, § 2, p. 1997.) When section 9504, subdivision (3), supplanted the quoted trust receipts statute, we believe the California drafters decided to retain the notice requirement and to add a notice-by-publication rule akin to that present for public sales of foreclosed real property (former Civ. Code, § 2924; former Code Civ. Proc., § 692, subd. 3, enacted in 1872 and

repealed by Stats. 1982, ch. 1364, § 1, p. 5070).

In contrast to notice, one purpose of which is to alert the debtor and other secured creditors to take steps to protect their interests, possibly including      locating bidders for their collateral, the purpose of requiring adequate advertising of a foreclosure sale is to force the secured party to ensure the auction is well attended by legitimate bidders, so that the highest commercially reasonable price for the collateral will be obtained.

(1c) But a prime purpose of notice by publication is to provide notice of the auction to the public — i.e., to advertise, in the broad sense of that term, the sale. "Whereas the official text provides only for 'reasonable [notification],' the legislation adopted in California explicitly sets out the requirements for notice both to the debtor *and* to the general public when a public sale is to be held." (*Ford Motor Credit Co. v. Price, supra*, 163 Cal. App.3d 745, 750.) Hence, there will surely be sales of foreclosed personalty for which the advertising requirement will be wholly satisfied by giving notice by publication as specified in section 9504, subdivision (3).

Failure to comply strictly with the notice-by-publication requirement is fatal to a contention of compliance with section 9504, subdivision (3). (*Ford Motor Credit Co. v. Price, supra*, 163 Cal. App.3d at pp. 750-751.) Thus, the minimum advertising required to make the publicity aspect of a sale of foreclosed collateral commercially reasonable is the notice given by publication. But if placing the required legal notice is not a commercially reasonable method of informing potential buyers of the sale's time and place, the sale will fail to meet the requirements of subdivision (3) of section 9504.

We find support for our view that giving proper notice does not necessarily make a sale's publicity aspect commercially reasonable in the Uniform Land Security Interest Act (7A West's U. Laws Ann. (1994 supp.) U. Land Security Interest Act, p. 207 et seq.), which was promulgated in 1985. Section 509, subdivision (a), of the Uniform Land Security Interest Act requires that "every aspect of the sale, including the method, *advertising,* time, place, and terms, must be reasonable." (7A West's U. Laws Ann., *supra,* at p. 247, italics added.) The Uniform Land Security Interest Act's dispositional language mimics the requirement in the Uniform Commercial Code's official text that "every aspect of the disposition including the method, *manner,* time, place and terms must be commercially reasonable" (3B West's U. Laws Ann., *supra,* U. Com. Code, § 9-504, subd. (3), p. 127, italics added), but replaces *manner* with *advertising.* Each uniform law contains, in a separate sentence, a distinct requirement of proper notice, a grammatical and functional separation of notice and reasonableness mirrored in subdivision (3) of California Uniform Commercial Code section 9504.

Naturally, neither the official Uniform Commercial Code text nor that of the Uniform Land Security Interest Act can be considered to divine what the      California Legislature intended in 1963 with regard to personal property. But the parallels in structure between the uniform acts and the California Uniform Commercial Code, and the specific reference to advertising in the Uniform Land Security Interest Act, reinforce our conclusion that fulfilling the notice provisions of section 9504, subdivision (3), does not automatically satisfy that subdivision's separate requirement that the sale's advertising aspect be commercially reasonable.

Our conclusion that the Legislature did not intend to deem the advertising aspect of every sale commercially reasonable merely because the notice requirements are met is supported by the canon that the courts "should construe every statute with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness." (*Clean Air Constituency v. California State Air Resources Bd.* (1974) 11 Cal.3d 801, 814 [114 Cal. Rptr. 577, 523 P.2d 617].) (4) The purpose of the Uniform Commercial Code, in California and elsewhere, was to create a statutory scheme that would yield the fairest and most efficient framework possible for transactions involving personalty and fixtures.

As regards fairness, concepts of reasonableness and good faith are immanent in the code. "[A] basic principle running throughout [the Uniform Commercial Code] ... is that in commercial transactions good faith is required in the performance and enforcement of all agreements or duties." (1 West's U. Laws Ann. (1994 supp.) U. Com. Code, com. to § 1-203, p. 30); see also Cal. U. Com. Code, § 1203, & com. thereto.)

As regards efficiency, the code's article 9 replaced a clutch of security devices — pledges, conditional sales, chattel mortgages, trust receipts, and the like — with a single device, the security interest, the purpose of which was to facilitate secured transactions in personalty and fixtures. (See 2 White & Summers, *op. cit. supra*, § 23-1, pp. 241-242.) As the Court of Appeal herein explained, a consortium of academics, lawyers, and business interests reviewed the Uniform Commercial Code extensively and recommended to the Legislature that a modified version be enacted in California. (Pt. 1 of the Sixth Progress Rep. to the Leg. by the Sen. Fact Finding Com. on Judiciary (1959-1961) the Uniform Commercial Code, 1 appen. to Sen. J. (1961 Reg. Sess.).) This 845-page report (Sixth Progress Report) is the authoritative source of legislative history for section 9504, subdivision (3), and it reflects the great care that was given to drafting the California Uniform Commercial Code.

The Sixth Progress Report contains the final report of the State Bar's Subcommittee on article 9. That panel supported the proposed statutory       scheme because it would "provide[ ] for the creation of security interests with a minimum of formalities and restrictions, in recognition of present-day [business] needs." "In short," the panel explained, "the Article provides a simple and unified structure within which present-day financing on the basis of chattel security can be accomplished with less cost and with greater certainty." (Sixth Progress Rep., *supra*, at p. 397.) This idea was codified in the California Uniform Commercial Code's general provisions. (§ 1102, subd. (2)(a).)

Clearly, fairness and efficiency would both suffer from a rule that giving notice in an obscure publication always will satisfy the advertising aspect of a reasonable sale of foreclosed collateral as long as the other notice requirements have been met. Such a rule would often serve the interest of no one except possibly the foreclosing secured party.

Having set forth the law, we return to the matter at bench.

(5) The inquiry whether a sale was commercially reasonable under section 9504, subdivision (3), including whether it was adequately publicized, is intensively factual and "the answer depends on all of the circumstances existing at the time of the sale." (*Clark Equipment Co. v. Mastelotto, Inc., supra*, 87 Cal. App.3d 88, 96.) A reviewing court must not disturb a trial court's factual findings or conclusion on this question unless no substantial evidence supports them. (*Peery v. Superior Court* (1981) 29 Cal.3d 837, 845 [176 Cal. Rptr. 533, 633 P.2d 198].)

(1d) In this case, substantial evidence supported the trial court's conclusion that the Phoenix newspapers, with their limited circulation, did not provide a forum likely to bring bidders and a fair price for the foreclosed aircraft, and the sale hence was commercially unreasonable. (See *General Elec. Credit v. Durante Bros., etc.* (1980) 79 A.D.2d 509 [433 N.Y.S.2d 574, 576] ["the newspaper selected for advertising was clearly not the most appropriate one for reaching the intended market."].) But as stated, in another case involving different collateral the trier of fact may find that giving the required legal notice alerted the relevant market to the sale and thereby satisfied the requirement of adequate promotion.

Our decision does not end these proceedings, however. As mentioned *ante*, page 1226, the Court of Appeal's judgment made it unnecessary for that court to address a number of defendant's claims of error. The Court of       Appeal's judgment is reversed and the cause is remanded to consider defendant's other claims.

Lucas, C.J., Kennard, J., Arabian, J., Baxter, J., George, J., and Werdegar, J., concurred.

The petition of appellant ITT Commercial Finance Corp. for a rehearing was denied February 23, 1995.

[1] In its entirety, section 9504, subdivision (3), currently provides:

"A sale or lease of collateral may be as a unit or in parcels, at wholesale or retail and at any time and place and on any terms, *provided the secured party acts in good faith and in a commercially reasonable manner.* Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, the secured party must give to the debtor, if he or she has not signed after default a statement renouncing or modifying his or her right to notification of sale, and to any other person who has a security interest in the collateral and who has filed with the secured party a written request for notice giving his or her address (before that secured party sends his or her notification to the debtor or before debtor's renunciation of his or her rights), a notice in writing of the time and place of

any public sale or of the time on or after which any private sale or other intended disposition is to be made. Such notice must be delivered personally or be deposited in the United States mail postage prepaid addressed to the debtor at his or her address as set forth in the financing statement or as set forth in the security agreement or at such other address as may have been furnished to the secured party in writing for this purpose, or, if no address has been so set forth or furnished, at his or her last known address, and to any other secured party at the address set forth in his or her request for notice, at least five days before the date fixed for any public sale or before the day on or after which any private sale or other disposition is to be made. Notice of the time and place of a public sale shall also be given at least five days before the date of sale by publication once in a newspaper of general circulation published in the county in which the sale is to be held or in case no newspaper of general circulation is published in the county in which the sale is to be held, in a newspaper of general circulation published in the county in this state that (1) is contiguous to the county in which the sale is to be held and (2) has, by comparison with all similarly contiguous counties, the highest population based upon total county population as determined by the most recent federal decennial census published by the Bureau of the Census. Any public sale shall be held in the county or place specified in the security agreement, or if no county or place is specified in the security agreement, in the county in which the collateral or any part thereof is located or in the county in which the debtor has his or her residence or chief place of business, or in the county in which the secured party has his or her residence or a place of business if the debtor does not have a residence or chief place of business within this state. If the collateral is located outside of this state or has been removed from this state, a public sale may be held in the locality in which the collateral is located. Any public sale may be postponed from time to time by public announcement at the time and place last scheduled for the sale. The secured party may buy at any public sale and if the collateral is customarily sold in a recognized market or is the subject of widely or regularly distributed standard price quotations he or she may buy at private sale. Any sale of which notice is delivered or mailed and published as herein provided and which is held as herein provided is a public sale." (Italics added.)

[2] In its entirety, section 9507, subdivision (2), currently provides: "The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner. If the secured party either sells the collateral in the usual manner in any recognized market therefor or if he sells at the price current in such market at the time of his sale or *if he has otherwise sold in conformity with reasonable commercial practices* among dealers in the type of property sold he has sold in a commercially reasonable manner. The principles stated in the two preceding sentences with respect to sales also apply as may be appropriate to other types of disposition. A disposition which has been approved in any judicial proceeding or by any bona fide creditors' committee or representative of creditors shall conclusively be deemed to be commercially reasonable, but this sentence does not indicate that any such approval must be obtained in any case nor does it indicate that any disposition not so approved is not commercially reasonable." (Italics added.)

Save trees - read court opinions online on Google Scholar.

8 Cal.4th 1220 (1994)
885 P.2d 877
36 Cal. Rptr.2d 464

## FORD & VLAHOS, Plaintiff, Cross-defendant and Appellant,

v.

## ITT COMMERCIAL FINANCE CORP., Defendant, Cross-complainant and Appellant.

Docket No. S035748.

**Supreme Court of California.**

December 15, 1994.

COUNSEL

Kline & Joseph, Stephen L. Joseph, Richard Collier Sears, Nossaman, Guthner, Knox & Elliott, William T. Bagley and Douglas J. Maloney for Plaintiff, Cross-defendant and Appellant.

Christopher M. Micheli and Nancy M. McDonough as Amici Curiae on behalf of Plaintiff, Cross-defendant and Appellant.

Howard, Rice, Nemerovski, Canady, Robertson & Falk, Howard, Rice, Nemerovski, Canady, Robertson, Falk & Rabkin, Jerome B. Falk, Jr., Bernard A. Burk and Matthew F. Weil for Defendant, Cross-complainant and Appellant.

Christopher E. Chenoweth as Amicus Curiae on behalf of Defendant, Cross-complainant and Appellant.

OPINION

MOSK, J.

This case presents a narrow question of law: whether the California version of Uniform Commercial Code section 9-504, subdivision (3), definitively limits a secured party's duty to advertise the sale of collateral merely to placing a legal notice in a newspaper. We conclude it does not, and therefore reverse the Court of Appeal's judgment and remand the case for consideration of the secured party's other claims of error.

Defendant secured party lent plaintiff debtor money to buy a Lockheed Hercules C-130A aircraft and acquired a purchase-money security interest in it. The parties agreed that California law would govern the security agreement.

Plaintiff defaulted on the loan and was notified by defendant that it would repossess the aircraft. On August 26, 1987, defendant informed plaintiff it would hold a public sale of the C-130A on September 3 at Chandler, Arizona.

On August 28, 1987, defendant advertised the sale's time and place in the Arizona Republic, a newspaper of general circulation in Maricopa County, Arizona, where Chandler is located. The advertisement stated that the United States Department of State would have to approve "the purchaser and the secured party's right to bid [on] and purchase" the aircraft. But the advertisement apparently inadvertently omitted the information about whom to contact to qualify as a bidder. That error caused defendant to place a corrected advertisement in the Phoenix (Arizona) Gazette on September 2.

Defendant, the sole bidder at the auction, bought the C-130A the next day for $1 million. After the sale defendant's agent advertised the aircraft in Trade-A-Plane. The agent testified that Trade-A-Plane is "the Bible of aircraft sales in this country." In March 1988 defendant agreed to sell the C-130A to African Air Trans, Inc., for $1,525,000, eventually, according to defendant, receiving $1,487,000 from that company.

Plaintiff sued for improper disposition of the collateral and defendant cross-complained for a deficiency plaintiff allegedly

owed after credit for the $1 million foreclosure-sale bid.

The trial court found the aircraft's sale commercially unreasonable because accompanied by insufficient publicity and hence the subject of too few bids. The court also found the notices of sale "legally insufficient" for various reasons. The court's statement of decision recited:

"The only notice of the auction was the *Arizona Republic* newspaper ad placed in the auction section of the newspaper. The ad contained an incomplete sentence regarding qualifications to purchase.

"The Court finds that a correction appeared in the *Phoenix Gazette* on September 2, 1987, one day prior to the auction.

"The Court finds that there was no evidence that the *Arizona Republic* or *Phoenix Gazette* were publications circulated among or read by potential purchasers of this Aircraft.

"The Court finds that no publicity for the September auction sale was given in aviation trade journals, such as *Trade-A-Plane*. ...

"The Court concludes that publication of a notice for the September 3 auction of this Aircraft in the *Phoenix Gazette* was legally insufficient to satisfy [California Uniform Commercial Code section] 9504 in that it did not conform to the five-day time requirement of the statute.

"The Court finds that the *Arizona Republic* notice affirmatively stated that prequalification as a bidder was necessary.

"The Court concludes that the omission of any contact name or telephone number to obtain prequalification information rendered the *wording* contained in the *Arizona Republic* notice legally insufficient under [California Uniform Commercial Code section] 9504....

"The Court finds that, other than the newspaper notices, Defendant ITT made no efforts to contact potential purchasers regarding the September 3 auction.

"The Court finds that Defendant ITT had available to it the resources of an aircraft broker ... who knew potential aircraft buyers and the means of publicity to announce aircraft auctions....

"The Court concludes that Defendant ITT did not conduct the auction sale on September 3, 1987 in good faith and in a commercially reasonable manner as required by [California Uniform Commercial Code section] 9504...."

With regard to the collateral's value, the court ruled, "based on ... expert opinion testimony ..., that the fair market value of the Aircraft on the date of sale, September 3, 1987, was $3.8 million."

On the basis of that valuation, the court set plaintiff's damages at $3.8 million, but granted defendant an offset of $996,050, a figure representing the sum of plaintiff's debt to defendant and defendant's expenses in repossessing, refurbishing and selling the aircraft. The ensuing judgment netted plaintiff $2,803,950.

The Court of Appeal reversed the judgment in part. As relevant here, the majority decided the Legislature had created a "safe harbor" in California Uniform Commercial Code section 9504, subdivision (3) — unlabeled statutory references are to this code — whereby satisfying the statute's notice requirement precluded any challenge to the sale's commercial reasonableness on the basis of inadequate publicity. The majority wrote, "ITT [defendant] contends that by specifying the time and manner for notice of a public sale, our Legislature intended to establish a bright-line rule to prevent disputes over the `reasonableness' of presale publicity. This contention is supported by the legislative history of section 9504(3)." Thus, the majority         reasoned, "Compliance with the letter of section 9504(3) creates a safe harbor against claims that the publicity for a public sale was inadequate." Acknowledging that "there may be situations ... where such a limited notice would seem less than fair," the majority stated in essence that any complaints should be addressed to the Legislature. The majority thus rejected the reasoning of *American Business Credit Corp. v. Kirby* (1981) 122 Cal. App.3d 217, 221 [175 Cal. Rptr. 720], and *Clark Equipment Co. v. Mastelotto, Inc.* (1978) 87 Cal. App.3d 88, 96-97 [150

Cal. Rptr. 797], "cases that have suggested, contrary to our conclusion, that a single, timely newspaper notice might not be sufficient," because those cases "did not consider section 9504(3)'s legislative history, or address whether the statute's notice provisions were meant to conclusively establish what is required to publicize an auction of collateral."

The dissent declared that the majority's bright-line rule was unfounded. Citing the cases mentioned above, the dissent observed that, "In each of these cases the court treated adequate notice and publicity adequate to be commercially reasonable as two distinct inquiries. Adequate notice, that is notice which met the minimum requirements of the subdivision, did not define the scope of commercially reasonable publicity or advertising." The dissent continued, "In my view the specific notice requirements imposed by the section define the minimum notice which must be given. I do not, unlike the majority, construe *notice* to be coextensive with *publicity*. The duty to publicize a sale adequately arises from the general duty of the creditor to act `in a commercially reasonable manner.' What is commercially reasonable publicity must turn on the specific circumstances of what the collateral is and how it is to be sold. [¶] ... The published notice given here was not, standing alone, commercially reasonable publicity for the sale of a multimillion dollar aircraft."

Because the Court of Appeal majority concluded that the Legislature had conclusively defined the publicity required for a sale of foreclosed collateral, it did not address defendant's other claims of error, including contentions regarding the court's calculation of the aircraft's value, its valuation of defendant's expenses attendant to repossessing and selling the aircraft, and its asserted refusal to find that plaintiff was not the real party in interest.

We granted plaintiff debtor's petition for review. For its part, defendant secured party requests that we take judicial notice of certain materials bearing on legislative intent. That request, which is unopposed, is also granted. (Evid. Code, §§ 452, subds. (c), (h), 459, subd. (a).)

(1a) Defendant contends that the references to notice in subdivision (3) of section 9504 conclusively define the publicity required for a public sale of foreclosed collateral. Defendant reasons that because it met the statute's notice requirements, the court could not properly find the sale commercially unreasonable for want of sufficient publicity. In sum, it contends the Court of Appeal majority correctly understood the meaning of section 9504, subdivision (3).

We interpret the California Uniform Commercial Code otherwise. As we will describe, notice on the one hand, and publicity or advertising on the other, are separate but related concepts under the California Uniform Commercial Code. (We define advertising broadly as all efforts to alert possible buyers to an impending sale, including professionally designed displays in public media and flyers or brochures circulated to a narrower audience.)

The Legislature enacted a modified form of Uniform Commercial Code section 9-504, subdivision (3). (Compare Stats. 1963, ch. 819, § 1, pp. 1993-1994, with 3B West's U. Laws Ann. (1992) U. Com. Code, pp. 127-129.) Having been amended in certain minor respects irrelevant to our inquiry, section 9504, subdivision (3), now provides in relevant part: "A sale or lease of collateral may be as a unit or in parcels, at wholesale or retail and at any time and place and on any terms, provided the secured party acts in good faith and in a commercially reasonable manner. [Ordinarily] the secured party must give to the debtor ... and to any other person who has a security interest in the collateral and who has filed with the secured party a written request for notice ..., a notice in writing of the time and place of any public sale or of the time on or after which any private sale or other intended disposition is to be made. Such notice must be delivered personally or be deposited in the United States mail postage prepaid addressed to the debtor ... and to any other secured party ... at least five days before the date fixed for any public sale or before the day on or after which any private sale or other disposition is to be made. Notice of the time and place of a public sale shall also [ordinarily] be given at least five days before the date of sale by publication once in a newspaper of general circulation published in the county in which the sale is to be held.... The secured party may buy at any public sale and if the collateral is customarily sold in a recognized market or is the subject of widely or regularly distributed standard price quotations he or she may buy at private sale. Any sale of which notice is       delivered or mailed and published as herein provided and which is held as herein provided is a public sale."[1]

By its plain terms, section 9504, subdivision (3), provides that the secured party is to "act[ ] in good faith and in a commercially reasonable manner" when auctioning foreclosed personalty. (See also § 1203.) The term "commercially reasonable" is again articulated, and is partially defined, in section 9507, subdivision (2), which provides in relevant part,

"The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner. If        the secured party either sells the collateral in the usual manner in any recognized market therefor or if he sells at the price current in such market at the time of his sale or if he has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold he has sold in a commercially reasonable manner."[2]

Read together, sections 9504, subdivision (3), and 9507, subdivision (2), cast considerable doubt on the Court of Appeal majority's view that as long as the statutory notice requirements are met, the publicity attending a sale of foreclosed collateral is deemed to be commercially reasonable. Section 9507 provides that property sold by methods a responsible dealer would utilize is sold in a commercially reasonable manner. A dealer in the type of property repossessed here — a valuable airplane — surely would advertise its auction in the relevant market by, for example, informing brokers, placing reasonably prominent announcements in recognized trade journals, or contacting individuals or entities known to be seeking an airplane of the type for sale. (See _Grumman Credit_ v. _Rivair Flying Service_ (Okla. 1992) 845 P.2d 182, 186 [845 P.2d 182]; _Contrail Leasing Partners_ v. _Consolidated Airways_ (7th Cir.1984) 742 F.2d 1095, 1099; _C.I.T. Corporation_ v. _Lee Pontiac, Inc._ (9th Cir.1975) 513 F.2d 207, 210.) To be sure, nowhere does subdivision (2) of section 9507 explicitly state that failing to sell collateral of this type as would a responsible dealer makes the sale commercially unreasonable. But it is difficult to read the law any other way with regard to the valuable type of collateral at issue here. (See _Canadian Commercial Bank_ v. _Ascher Findley Co._ (1991) 229 Cal. App.3d 1139, 1149 [280 Cal. Rptr. 521] ["A commercially reasonable disposition is presumed to be in good faith and at the greatest possible market rate."].)

And yet defendant's interpretation of section 9504, subdivision (3), would simply nullify section 9507, subdivision (2), whenever complying with the former statute's formal notice requirements would not yield the kind of        publicity a responsible dealer would generate to sell a chattel of the type foreclosed. We cannot conclude that the Legislature meant to provide that a sale's advertising is commercially reasonable as long as the bare requirements of formal notice are met, even if, to sell the type of collateral involved, a responsible dealer would employ more extensive advertising than placing a legal notice in agate type in an obscure newspaper. Publicity is much too important to a proper sale of foreclosed collateral for such a hypothesis to be commercially viable. (2) For advertising is sine qua non to attendance at an auction, and as then-Presiding Justice Panelli explained in _Ford Motor Credit Co._ v. _Price_ (1985) 163 Cal. App.3d 745, 751 [210 Cal. Rptr. 17], "Common sense tells us that the larger the attendance at a public sale of collateral, the more likely it is that there will be competitive bidding. Competitive bidding helps to assure that the purchase price approximates the fair market value of the property and also prevents a [secured party] from exaggerating his deficiency by underbidding." Hence, "[o]ne of the most important elements of commercial reasonableness is the duty to surround the sale with publicity sufficient to attract a `lively concourse of bidders.'" (_Westgate State Bank_ v. _Clark_ (1982) 231 Kan. 81 [642 P.2d 961, 970].)

(1b) The importance of advertising as an element of commercial reasonableness was emphasized in _Villella Enterprises, Inc._ v. _Young_ (1988) 108 N.M. 33 [766 P.2d 293], the facts of which are similar to those the trial court found here. "We are particularly concerned with the minimal effort exerted by Villella to notify the public of the sale. Notice of sale should be given to a `public' reasonably expected to have an interest in the collateral and should be `published in a manner reasonably calculated to assure such publicity that the collateral will bring the best possible price from competitive bidding of a strived-for lively concourse of bidders.' [Citations.] Villella placed an ad only in the _Health City Sun,_ a weekly legal periodical, two weeks prior to the sale. No evidence was produced that the _Health City Sun_ is the type of publication that would reach prospective bidders for the assets of a bar business. [Citations.] Neither is there any indication that Villella contacted the individuals who had offered ... to purchase [the business] ... even though he was aware of their identities." (766 P.2d at p. 297; see also _Commercial Credit Equipment_ v. _Parsons_ (Mo. Ct. App. 1991) 820 S.W.2d 315, 323; _Farmers Equipment Company_ v. _Miller_ (1972) 252 Ark. 1092 [482 S.W.2d 805, 809-810]; _Levers_ v. _Rio King Land & Inv. Co._ (1977) 93 Nev. 95 [560 P.2d 917, 920].)

The foregoing reasoning clearly applies to the sale of an airplane. (_Dynalectron Corporation_ v. _Jack Richards Aircraft Co._ (W.D.Okla. 1972) 337        F. Supp. 659, 662-663.) "Although [secured party] offered testimony that it gave notice of the sale orally to all major airplane brokers in the United States, the judge disbelieved this testimony, and we cannot

say he was clearly wrong to do so. So far as appears, all [secured party] did in the way of notice was to place an inconspicuous ad in one publication of the used-aircraft trade.... There was testimony that a serious effort to interest potential buyers would have required a more conspicuous ad plus advertising in other trade publications as well. The fact that no one showed up for the sale except [secured party] is consistent with the fact that [it] made little effort, on this occasion anyway, to sell the plane." (*Contrail Leasing Partners* v. *Consolidated Airways, supra,* 742 F.2d at p. 1099.)

Our analysis cannot end at this point, however. Defendant has consistently maintained that although a public sale's "time," "place," and "terms" must be "commercially reasonable" (§ 9504, subd. (3)), notice need not meet that standard, because the Legislature specified the notice required, commercially reasonable or not, to the exclusion of any other rule, and we are not free to simply cast aside that language, regardless of the logic of our reasoning. In sum, defendant might assert that just as we conclude defendant's view of notice and advertising would, if adopted, nullify section 9507, subdivision (2) (*ante,* pp. 1229-1230), our discussion in turn renders the notice language of section 9504, subdivision (3), ineffectual, and that "'[a] construction which makes sense of an apparent inconsistency is to be preferred to one which renders statutory language useless or meaningless.'" (*Hartford Fire Ins. Co.* v. *Macri* (1992) 4 Cal.4th 318, 326 [14 Cal. Rptr.2d 813, 842 P.2d 112].)

Such an equivalence would be false, however. It could only arise under a mistaken view that the Legislature merged adequate advertising and formal notice into a single requirement for a valid foreclosure sale. In fact the requirements of proper notice and of commercial reasonableness, including reasonable advertising, are distinct, although, as we explain *post,* page 1233, notice by publication is a form of advertising and therefore fulfilling the notice-by-publication requirement will in some circumstances satisfy the requirement of adequate promotion of a sale. (*Am. State Bank of Killdeer* v. *Hewson* (N.D. 1987) 411 N.W.2d 57, 60] [discussing the "twofold obligation ... to conduct the sale of the collateral in a commercially reasonable manner and to provide `reasonable notification of the time and place of any public sale'"]; *Levers* v. *Rio King Land & Inv. Co., supra,* 560 P.2d 917, 919-920 ["In addition to giving reasonable notice, a secured party must, after default, proceed in a commercially reasonable manner to dispose of collateral."]; *Clark Equipment Co.* v. *Mastelotto, Inc., supra,* 87 Cal. App.3d 88, 96.)

(3) The purpose of notice to the debtor and to other secured creditors under the California Uniform Commercial Code is to alert them that their interests may be extinguished very soon. This concept derives from the venerable American legal rule that a private creditor must give formal legal notice before selling a debtor's property at public auction. (*Newman* v. *Jackson* (1827) 25 U.S. [12 Wheat.] 570, 572-574 [6 L.Ed. 732, 732-733]; see 1 Glenn on Mortgages (1943) § 107, p. 644.) Because a nonjudicial foreclosure sale is a "summary sale" (*Podrat* v. *Oberndorff* (1929) 207 Cal. 457, 459 [278 P. 1035, 63 A.L.R. 1308] [discussing pledges and chattel mortgages]) that the secured party is entitled to conduct relatively quickly (see 2 White & Summers, Uniform Commercial Code (3d ed. 1988) § 27-12, p. 605), elementary fairness to the debtor requires that it, other interested parties, and the public receive formal notice so as to protect the debtor from another's self-dealing or an unfairly low auction price (4 Casner, American Law of Property (1952) Mortgages, § 16.207, pp. 505-509).

Such notice requirements have existed in California for many decades. (Civ. Code, §§ 2924f, subd. (b)(1), 2924g, subd. (a) [public auction of real property foreclosed under power of sale]; *Sargent* v. *Shumaker* (1924) 193 Cal. 122, 125 [223 P. 464].) Hence it is wholly unremarkable that a notice requirement found its way into California's version of subdivision (3)(b) of section 6 of the Uniform Trust Receipts Act (1933) (quoted in 9C Thompson's U. Laws Ann. (1957) at p. 247), an immediate predecessor to section 9504 (see 3B West's U. Laws Ann., *supra,* U. Com. Code, com. to § 9-504, p. 129). The California trust receipts law provided that if a trustee defaulted, an entruster in possession of the goods might "on or after default, give notice to the trustee of intention to sell, and may, not less than five days after the serving or sending of such notice, sell the goods ... at public or private sale, and may at a public sale himself become a purchaser.... Notice of sale shall be deemed sufficiently given if in writing, and either (i) personally served on the trustee, or (ii) sent by postpaid ordinary mail to the trustee's last known business address." (Former Civ. Code, § 3016.2, subd. (3)(b), added by Stats. 1935, ch. 716, § 1, pp. 1930, 1934-1935, and repealed by Stats. 1963, ch. 819, § 2, p. 1997.) When section 9504, subdivision (3), supplanted the quoted trust receipts statute, we believe the California drafters decided to retain the notice requirement and to add a notice-by-publication rule akin to that present for public sales of foreclosed real property (former Civ. Code, § 2924; former Code Civ. Proc., § 692, subd. 3, enacted in 1872 and

repealed by Stats. 1982, ch. 1364, § 1, p. 5070).

In contrast to notice, one purpose of which is to alert the debtor and other secured creditors to take steps to protect their interests, possibly including       locating bidders for their collateral, the purpose of requiring adequate advertising of a foreclosure sale is to force the secured party to ensure the auction is well attended by legitimate bidders, so that the highest commercially reasonable price for the collateral may be obtained.

(1c) But a prime purpose of notice by publication is to provide notice of the auction to the public — i.e., to advertise, in the broad sense of that term, the sale. "Whereas the official text provides only for `reasonable [notification],' the legislation adopted in California explicitly sets out the requirements for notice both to the debtor *and* to the general public when a public sale is to be held." (*Ford Motor Credit Co. v. Price, supra*, 163 Cal. App.3d 745, 750.) Hence, there will surely be sales of foreclosed personalty for which the advertising requirement will be wholly satisfied by giving notice by publication as specified in section 9504, subdivision (3).

Failure to comply strictly with the notice-by-publication requirement is fatal to a contention of compliance with section 9504, subdivision (3). (*Ford Motor Credit Co. v. Price, supra*, 163 Cal. App.3d at pp. 750-751.) Thus, the minimum advertising required to make the publicity aspect of a sale of foreclosed collateral commercially reasonable is the notice given by publication. But if placing the required legal notice is not a commercially reasonable method of informing potential buyers of the sale's time and place, the sale will fail to meet the requirements of subdivision (3) of section 9504.

We find support for our view that giving proper notice does not necessarily make a sale's publicity aspect commercially reasonable in the Uniform Land Security Interest Act (7A West's U. Laws Ann. (1994 supp.) U. Land Security Interest Act, p. 207 et seq.), which was promulgated in 1985. Section 509, subdivision (a), of the Uniform Land Security Interest Act requires that "every aspect of the sale, including the method, *advertising,* time, place, and terms, must be reasonable." (7A West's U. Laws Ann., *supra*, at p. 247, italics added.) The Uniform Land Security Interest Act's dispositional language mimics the requirement in the Uniform Commercial Code's official text that "every aspect of the disposition including the method, *manner,* time, place and terms must be commercially reasonable" (3B West's U. Laws Ann., *supra*, U. Com. Code, § 9-504, subd. (3), p. 127, italics added), but replaces *manner* with *advertising*. Each uniform law contains, in a separate sentence, a distinct requirement of proper notice, a grammatical and functional separation of notice and reasonableness mirrored in subdivision (3) of California Uniform Commercial Code section 9504.

Naturally, neither the official Uniform Commercial Code text nor that of the Uniform Land Security Interest Act can be considered to divine what the       California Legislature intended in 1963 with regard to personal property. But the parallels in structure between the uniform acts and the California Uniform Commercial Code, and the specific reference to advertising in the Uniform Land Security Interest Act, reinforce our conclusion that fulfilling the notice provisions of section 9504, subdivision (3), does not automatically satisfy that subdivision's separate requirement that the sale's advertising aspect be commercially reasonable.

Our conclusion that the Legislature did not intend to deem the advertising aspect of every sale commercially reasonable merely because the notice requirements are met is supported by the canon that the courts "should construe every statute with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness." (*Clean Air Constituency v. California State Air Resources Bd.* (1974) 11 Cal.3d 801, 814 [114 Cal. Rptr. 577, 523 P.2d 617].) (4) The purpose of the Uniform Commercial Code, in California and elsewhere, was to create a statutory scheme that would yield the fairest and most efficient framework possible for transactions involving personalty and fixtures.

As regards fairness, concepts of reasonableness and good faith are immanent in the code. "[A] basic principle running throughout [the Uniform Commercial Code] ... is that in commercial transactions good faith is required in the performance and enforcement of all agreements or duties." (1 West's U. Laws Ann. (1994 supp.) U. Com. Code, com. to § 1-203, p. 30); see also Cal. U. Com. Code, § 1203, & com. thereto.)

As regards efficiency, the code's article 9 replaced a clutch of security devices — pledges, conditional sales, chattel mortgages, trust receipts, and the like — with a single device, the security interest, the purpose of which was to facilitate secured transactions in personalty and fixtures. (See 2 White & Summers, *op. cit. supra*, § 23-1, pp. 241-242.) As the Court of Appeal herein explained, a consortium of academics, lawyers, and business interests reviewed the Uniform Commercial Code extensively and recommended to the Legislature that a modified version be enacted in California. (Pt. 1 of the Sixth Progress Rep. to the Leg. by the Sen. Fact Finding Com. on Judiciary (1959-1961) the Uniform Commercial Code, 1 appen. to Sen. J. (1961 Reg. Sess.).) This 845-page report (Sixth Progress Report) is the authoritative source of legislative history for section 9504, subdivision (3), and it reflects the great care that was given to drafting the California Uniform Commercial Code.

The Sixth Progress Report contains the final report of the State Bar's Subcommittee on article 9. That panel supported the proposed statutory        scheme because it would "provide[ ] for the creation of security interests with a minimum of formalities and restrictions, in recognition of present-day [business] needs." "In short," the panel explained, "the Article provides a simple and unified structure within which present-day financing on the basis of chattel security can be accomplished with less cost and with greater certainty." (Sixth Progress Rep., *supra*, at p. 397.) This idea was codified in the California Uniform Commercial Code's general provisions. (§ 1102, subd. (2)(a).)

Clearly, fairness and efficiency would both suffer from a rule that giving notice in an obscure publication always will satisfy the advertising aspect of a reasonable sale of foreclosed collateral as long as the other notice requirements have been met. Such a rule would often serve the interest of no one except possibly the foreclosing secured party.

Having set forth the law, we return to the matter at bench.

(5) The inquiry whether a sale was commercially reasonable under section 9504, subdivision (3), including whether it was adequately publicized, is intensively factual and "the answer depends on all of the circumstances existing at the time of the sale." (*Clark Equipment Co. v. Mastelotto, Inc., supra*, 87 Cal. App.3d 88, 96.) A reviewing court must not disturb a trial court's factual findings or conclusion on this question unless no substantial evidence supports them. (*Peery v. Superior Court (1981) 29 Cal.3d 837, 845 [176 Cal. Rptr. 533, 633 P.2d 198]*.)

(1d) In this case, substantial evidence supported the trial court's conclusion that the Phoenix newspapers, with their limited circulation, did not provide a forum likely to bring bidders and a fair price for the foreclosed aircraft, and the sale hence was commercially unreasonable. (See *General Elec. Credit v. Durante Bros., etc. (1980) 79 A.D.2d 509 [433 N.Y.S.2d 574, 576]* ["the newspaper selected for advertising was clearly not the most appropriate one for reaching the intended market."].) But as stated, in another case involving different collateral the trier of fact may find that giving the required legal notice alerted the relevant market to the sale and thereby satisfied the requirement of adequate promotion.

Our decision does not end these proceedings, however. As mentioned *ante*, page 1226, the Court of Appeal's judgment made it unnecessary for that court to address a number of defendant's claims of error. The Court of        Appeal's judgment is reversed and the cause is remanded to consider defendant's other claims.

Lucas, C.J., Kennard, J., Arabian, J., Baxter, J., George, J., and Werdegar, J., concurred.

The petition of appellant ITT Commercial Finance Corp. for a rehearing was denied February 23, 1995.

[1] In its entirety, section 9504, subdivision (3), currently provides:

"A sale or lease of collateral may be as a unit or in parcels, at wholesale or retail and at any time and place and on any terms, *provided the secured party acts in good faith and in a commercially reasonable manner*. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, the secured party must give to the debtor, if he or she has not signed after default a statement renouncing or modifying his or her right to notification of sale, and to any other person who has a security interest in the collateral and who has filed with the secured party a written request for notice giving his or her address (before that secured party sends his or her notification to the debtor or before debtor's renunciation of his or her rights), a notice in writing of the time and place of

any public sale or of the time on or after which any private sale or other intended disposition is to be made. Such notice must be delivered personally or be deposited in the United States mail postage prepaid addressed to the debtor at his or her address as set forth in the financing statement or as set forth in the security agreement or at such other address as may have been furnished to the secured party in writing for this purpose, or, if no address has been so set forth or furnished, at his or her last known address, and to any other secured party at the address set forth in his or her request for notice, at least five days before the date fixed for any public sale or before the day on or after which any private sale or other disposition is to be made. Notice of the time and place of a public sale shall also be given at least five days before the date of sale by publication once in a newspaper of general circulation published in the county in which the sale is to be held or in case no newspaper of general circulation is published in the county in which the sale is to be held, in a newspaper of general circulation published in the county in this state that (1) is contiguous to the county in which the sale is to be held and (2) has, by comparison with all similarly contiguous counties, the highest population based upon total county population as determined by the most recent federal decennial census published by the Bureau of the Census. Any public sale shall be held in the county or place specified in the security agreement, or if no county or place is specified in the security agreement, in the county in which the collateral or any part thereof is located or in the county in which the debtor has his or her residence or chief place of business, or in the county in which the secured party has his or her residence or a place of business if the debtor does not have a residence or chief place of business within this state. If the collateral is located outside of this state or has been removed from this state, a public sale may be held in the locality in which the collateral is located. Any public sale may be postponed from time to time by public announcement at the time and place last scheduled for the sale. The secured party may buy at any public sale and if the collateral is customarily sold in a recognized market or is the subject of widely or regularly distributed standard price quotations he or she may buy at private sale. Any sale of which notice is delivered or mailed and published as herein provided and which is held as herein provided is a public sale." (Italics added.)

[2] In its entirety, section 9507, subdivision (2), currently provides: "The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner. If the secured party either sells the collateral in the usual manner in any recognized market therefor or if he sells at the price current in such market at the time of his sale or *if he has otherwise sold in conformity with reasonable commercial practices* among dealers in the type of property sold he has sold in a commercially reasonable manner. The principles stated in the two preceding sentences with respect to sales also apply as may be appropriate to other types of disposition. A disposition which has been approved in any judicial proceeding or by any bona fide creditors' committee or representative of creditors shall conclusively be deemed to be commercially reasonable, but this sentence does not indicate that any such approval must be obtained in any case nor does it indicate that any disposition not so approved is not commercially reasonable." (Italics added.)

Save trees - read court opinions online on Google Scholar.